**RECEIVED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEB – 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GLORIA D. YELDER,　　　　　　　　)
1807 Eufaula Avenue　　　　　　　　) CIVIL ACTION NO:1:07-cv-01639 – RJL
Birmingham, AL 35208　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
UNITED STATES DEPARTMENT　　)
OF DEFENSE,　　　　　　　　　　)
ROBERT M. GATES,　　　　　　　　)
Secretary of Defense,　　　　　　　)
1000 Defense Pentagon　　　　　　　)
Washington, D.C. 20301-1000　　　　)
　　　　　　　　　　　　　　　　　)
And　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
DEFENSE SECURITY SERVICE　　　)
1340 Braddock Place,　　　　　　　　)
Alexandria, VA 22314-1651　　　　　)
　　　　　　　　　　　　　　　　　)
And　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
WASHINGTON HEADQUARTERS　)
SERVICES　　　　　　　　　　　　)
1155 Defense Pentagon　　　　　　　)
Washington, D.C. 20301-1155　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1. This is an action under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, *as amended*, to compel the production of records concerning

the security clearance investigation of plaintiff Gloria D. Yelder.

1

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a) (4) (B).

### Parties

3. Plaintiff, Gloria D. Yelder is a private citizen of the United States of America, and the State of Alabama, domiciled in Jefferson County, Birmingham, Alabama. Plaintiff Yelder is a former employee of Defendant Defense Security Service and is the requester of the withheld records.

4. Defendants United States Department of Defense ("DOD"), Defense Security Service ("DSS") and Washington Headquarters Service ("WHS") are agencies of the United States, and have possession of and control over the records that Plaintiff seeks.

### Statement of Facts

5. The Plaintiff is a former employee of DSS who was terminated from employment based upon the loss of her security clearance due to an alleged affair.

6. After exhausting her administrative remedies, the Plaintiff filed a Complaint in the United States District Court for the Northern District of Alabama on February 24, 2000, civil action number 00-N-0458-S,

2

challenging her termination from employment on the basis of violation of
her due process rights and Title VII.

7.  During the course of discovery in the aforementioned litigation and
subsequent litigation, the Defendants have failed to provide the Plaintiff with
a copy of a second periodic re-investigation, case control number, (CCN),
96192-DXC-1817-1E3, which was used by the agency as a basis for the
decision to revoke her security clearance and terminate her employment due
to an alleged affair.

8.  The history of the case demonstrates that a married female citizen, Mrs.
Andrea Whitfield, ("complainant") lodged a complaint that the Plaintiff was
harassing her; however, the complaint was an act of retaliation against the
Plaintiff because she (Plaintiff) was dating a single man, Mr. Alvin Green,
with whom the complainant was simultaneously having an extra-marital
affair.

9. The allegation of an affair having an effect on the revocation of
Plaintiff's security clearance and termination from employment was not
disclosed to Plaintiff until December 2004, although Plaintiff was terminated
in August 1998.  Also, Defendant stated that they were aware in 2001 that
Plaintiff did not know about the investigations.

10. By letter dated August 2005, Plaintiff requested from DSS a copy of all documents, periodic reinvestigations, including Inspector General Reports, Administrative Inquiry reports, DSS Security records and Equal Employment Opportunity records, used and/or relied upon in reaching the decision to revoke her clearance and terminated her employment.

11. In September 2005, Plaintiff appealed the decision to the Director of DSS. To date, she has not received a response.

12. The Plaintiff, by letter dated January 21, 2007, sent a subsequent request for documents to DSS.

13. Again Plaintiff has not received a response to her request to DSS.

14. The Plaintiff, also, by separate letter dated January 21, 2007, sent to Washington Headquarters Services, Department of Defense Office of Freedom of Information a request for a copy of all information pertaining to her security clearance, including Periodic Reinvestigation, (PR), case control number 96192-DXC-1817-1E3, Statement of Reasons, as well as any investigation or information pertaining to her security clearance.

15. WHS, by letter dated February 6, 2007, informed Plaintiff that the WHS Human Resources office was searching for documents responsive to Plaintiff's request and that the portion of Plaintiff's request concerning the

DSS falls under the control of DSS and had been forward to DSS for appropriate action.

16. The Plaintiff, by letter dated March 2007, again requested from DSS a copy of any documents material to her security clearance revocation.

17. DSS, through a request from WHS, by letter dated June 7, 2007, again provided Plaintiff with a copy of investigation, CCN 96192-DXO-1817-1b3, "O changed to C" with ink **and not** CCN 96192-DXC-1817-1E3 which had previously been provided and failed to provide a copy of the second periodic re-investigation which was used by Washington Headquarters and the agency as a basis for the decision to revoke her security clearance and terminate her employment.

18. The Defendants' refusal to disclose the requested records prejudiced Plaintiff's ability to prosecute her original action challenging her termination of her security clearance and termination from employment and her subsequent litigation to vindicate her rights.

19. The Administrative Judge that heard Plaintiff's case, Administrative Judge Braeman's, referenced two separate investigations.

20. The trial court's opinion in civil action 00-N-0458-S, in connection with Plaintiff's allegation that DOD violated Regulation § 8-201(a), stated, "[i]ndeed, it appears from the parties' submissions that there is a question of

fact as to whether DOD provided all of the records regarding Yelder's personnel security investigation." The trial court acknowledged that Yelder may not have been provided with records concerning (1) the supplemental administrative inquiry that was closed in August, 1996 and (2) the report of the polygraph examination that she took in September, 1996.

21. On October 23, 2007, WHS provided some documents to Plaintiff but stated that other documents about Plaintiff's security clearance and termination was being forward to DSS for their respond to Plaintiff. So DSS has the information about Plaintiff's periodic reinvestigations ,(PR), and other document that pertained to her security clearance and termination from employment.

22. WHS also stated that eight pages of information were being forward to the United States Department of Justice, (USDOJ),Executive Office of the US Attorneys for their response to Plaintiff. (See copy of letter from WHS, dated October 23, 2007 as Exhibits 1 and 2)

23. On November 26, 2007, DSS responded by sending copies of the same information that was sent in 1998, which included PR, CCN: 96192-DXC-1817-1b3, with the "O" changed to "C" with ink and not 96192-DXC-1817. The information in 1998 reflected two investigations. (See attached letter from DSS, dated November 26, 2007 as Exhibit 3.)

24. The information received by DSS in 2007 reflects information about one investigation.

25. In 1998, DSS stated that information was being withheld in accordance with 5 U. S. Code (b) (5).

26. In 2007, DSS stated that the information was being withheld for the following reason: a. Exemption (b) (6).

27. On December 9, 2007, Plaintiff appealed the decision of DSS. (See attached letter from Plaintiff to DSS, dated December 9, 2007 as Exhibit 4)

28. On January 3, 2008, DSS acknowledged receipt of Plaintiff's appeal. (See attached letter from DSS to Plaintiff, dated January 3, 2008 as Exhibit 5)

29. On January 17, 2008, Plaintiff requested that her documents be expedited since she had requested the information since 1998. (See attached letter to DSS from Plaintiff dated January 17, 2008 as Exhibit 6)

30. DSS acknowledged receipt of the letter on January 22, 2008. (See attached certified returned receipt as Exhibit 7.)

31. WHS stated that information was also being sent to the USDOJ for their response. (See attached letter, dated October 23, 2007 as Exhibit 1)

32. On November 30, 2007, the USDOJ, responded to Plaintiff about the information sent to them by WHS.

33. The information disclosed that USDOJ reviewed approximately 14 pages of material and five pages are being released in full and nine pages are withheld in full based on Section 552(b)(3) and 552a(j)(2). (See attached letter dated November 30, 2007 as Exhibit 8)

34. The only information that Plaintiff received from USDOJ was her original complaint that was filed with the court.

35. On December 9, 2007 Plaintiff appealed the decision of USDOJ. (See attached document dated December 9, 2007 as Exhibit 9)

36. On December 27, 2007, USDOJ acknowledged receipt of Plaintiff's appeal. (See attached document dated December 27, 2007 as Exhibit 10)

37. The Freedom of Information Act requires the agency to determine within 20 working days whether it will comply with the requests for information. 5U.S.C. 552a (6) (A).

38. To date, DSS and USDOJ have not responded to the requested information in the required time frame. Therefore, Plaintiff has exhausted her administrative remedies before she has asked for judicial review. Plaintiff at the present is waiting for DSS' answer to the expedition of records, so she did not ask the court to rule on this matter.

DEFENDANTS' REQUEST FOR EXEMPTIONS

39. The agency bears the burdens of justifying any withholdings and the court reviews the agency claims of exemption de novo. (See 5 U. S. C. 552(a) (4) (b), see also Ray, 502 U.S. at 173-74; summers v Department of Justice 140 F. 3d 1077, 1079-80 (D. C. Cir 1998)

40. DSS invoked *Exemption (b)(6:)* to protect personal information pertaining to other individuals, any release of which constitute a clearly unwarranted invasion of another individual's privacy.

41. *Exemption (b)(6)* was developed to protect intimate details of personal and family life, not business judgments and relationships. (Board of Trade v CFTC, 627 F. 2d 392, 399-400 (D.C. Cir 1980) (finding only a "slight privacy interest implicated by disclosure of purely commercial matters.)

42. The information Plaintiff has requested is about her security clearance which involves information about Plaintiff.

43. Plaintiff has been accused of having an alleged affair, but she was not made aware or allowed to respond to the allegation before her security clearance was revoked.

44. The information about the alleged affair originated with the defendant, DSS, in an email in 1995 and later without her knowledge and participation the email about the alleged affair became a part of Plaintiff's security clearance.

9

45.  The Defendant, DSS, should not be allowed to invoke exemption (b)(6), since it was DSS who maliciously and intentionally submitted the secret, fraudulent and confused information, (without due process afforded to Plaintiff as required by DoD 5200.2-R), to WHS, causing the revocation of Plaintiff's security clearance and termination of employment.

46.  *Exemption 552a (j)(2)* states that the head of any agency may promulgate rules, in accordance with the requirements. (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control or reduce crime or to apprehend criminals, and activities of prosecutors, courts, correctional, probations, pardon, or parole authorities, and which consists of (a information compiled for the purpose of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status.

   (a)  information compiled for criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, releases and parole and probation status;

10

(b) information complied for the purpose of criminal investigation, including reports of informants and investigation and associated with an identifiable individual; or

(c) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

47. It appears from exemption (j)(2) that a secret criminal investigation was conducted on Plaintiff and made a part of Plaintiff's security clearance, but Plaintiff has never been arrested, detained, warned or questioned by any law enforcements, even as a juvenile for any criminal act.

48. Plaintiff has never had any warrants issued against her for any criminal act.

49. Exemption (j)(2) does not apply.   Defendants should not be allowed to invoke exemption (j)(2), because this misleading information was secretly and intentionally placed in her security clearance and Plaintiff was never given due process to respond as required by DoD 5200.2-R..

50. *Exemption 552(b)(3)* requires that the matter be withheld from the public in such a manner as to leave no discretion of the issue.

51. Defendant should not be allowed to invoke 552(b)(3) because it was the defendant who secretly placed the fraudulent and misleading information in Plaintiff's security clearance that caused all the damage.

52. The information about the alleged affair and whatever was in the criminal investigation has left a lasting effect on Plaintiff, no one else. (See statement of Plaintiff, dated January 31, 2008, as Exhibit 11.)

53. There were so many individuals in DSS, including former co-workers, (who have nothing to do with Plaintiff's records), and former supervisors, who have seen and who are well aware of the secret investigations regarding Plaintiff, (the alleged affair and now the information about the criminal investigation).

54. How can this manner not leave no discretion of the issue, since these investigations have been disclosed to so many individuals, except for Plaintiff.

55. The government should not be allowed to invoke these exemptions now since the exempted information, (about the alleged affair and the information about the criminal investigation) was secretly placed in Plaintiff's security clearance. But Plaintiff was never given due process during the security clearance process as required by 5200.2-R.

56. At any time during the security clearance process, if the government would have followed the rules and regulations of DoD 5200.2-R, and not tampered with the investigations, Plaintiff could have received due process in the revocation of her security clearance by addressing the information.

57. Since the secret investigations/information have been frustrated, confused and intentionally used **without due process** to revoke Plaintiff's security clearance, damage her reputation and terminate her employment, none of these exemptions should apply.

58. Plaintiff's requested information is to restore her reputation and address the information that was placed in her security clearance which caused her career. *The government has admitted that they knew Plaintiff did not know about the investigations when Plaintiff filed her EEO complaints and during the pendency of the security clearance process.*

59. Plaintiff concludes by the responses from the Defendants that there was and still is information being withheld from Plaintiff. The important, pertinent and secret information/investigations that she should have received and address during the course of her security clearance process caused Plaintiff her security clearance and her career.

60. The Defendants have had so many different explanations about the investigations; they conducted for Plaintiff's security clearance. The

13

Defendants have changed the title of the investigations. They have changed and confused the contexts of the investigations. The defendants have changed the heading of the investigations to fix into whatever situation that is convenient for them with no consideration to Plaintiff's due process rights, her reputation, her security clearance or her career. The investigations have gone from a civilian married female who complained to DSS, (a woman who was having an affair with a single man that Plaintiff and the civilian female were both dating), to Plaintiff having an alleged affair to now a criminal investigation.

61. The website for the United States Attorney's Office states:

This significant responsibility of the public prosecutor was aptly described by Justice Sutherland in Berger v. United States, 295 U.S. 78, 88 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

62. The Defendants' refusal to provide the Plaintiff with a copy of the second investigation, as well as all other pertinent material documents prejudiced her ability to prosecute her case in the original litigation (civil

action number 00-N-0458-S) and to vindicate her rights in subsequent litigation.

63. After years of requests and inquiries, the Defendants have still failed to provide Plaintiff with the information she has requested.

64. Plaintiff has a statutory right to the records that she seeks, and there should be no legal basis for Defendants' refusal to disclose them.

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that Defendants' refusal to disclose the records requested by Plaintiff is unlawful;

(2) Deny the Defendants' requests for exemptions because they should not apply in this case.

(3) Order Defendants to make the requested records available to Plaintiff immediately.

(4) Award Plaintiff its costs and reasonable attorney's fee in this action    as provided by 5 U.S.C. § 552(a)(4)(E); and

(5) Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Gloria D. Yelder
*Pro se*
1807 Eufaula Avenue
Birmingham, AL 35208
(205) 613-6680

**DEFENDANTS SERVED VIA CERTIFIED MAIL:**

I, Gloria D. Yelder, hereby declare that on the ____2nd____ day of

____Feburary_____, 2008, I mailed a copy of the amended

Complaint and ten exhibits, certified mail return receipt , to the below listed

Defendant.

_____

Michele Johnson
United States Attorney for the District of Columbia
501 Third Street, NW
Washington, D.C. 20530

Gloria D. Yelder
*Pro se*
1807 Eufaula Avenue
Birmingham, AL 35208
(205) 613-6680

17



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

OCT 2 3 2007

Ref: 07-FP-0075

Ms. Gloria Yelder
1807 Eufaula Avenue
Birmingham, AL 35208

Dear Ms. Yelder:

This is in response to your January 21, 2007, Freedom of Information/Privacy Act request. We received your request on February 1, 2007.

The Washington Headquarters Service, Human Resources Directorate provides the enclosed documents in response to your request. However, additional material that they located falls under the cognizance of the Defense Security Service and the United States Department of Justice. Accordingly, we sent that material to them at the addresses provided below, with the request that they respond directly to you. There are no assessable fees for this response in this instance.

Defense Security Service
Chief FOIA and Privacy
1340 Braddock Place
Alexandria, VA 22314-1651

Executive Office of United States Attorneys
Department of Justice
FOIA/Privacy Unit
Room 7300, 600 E. Street, NW
Washington, DC 20530-0001

Sincerely,

Will Kammer
Chief

Enclosures:
As Stated

Exhibit 1



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

*063-28*

OCT 2 3 2007
Ref: 07-FP-0075

MEMORANDUM FOR DEFENSE SECURITY SERVICE
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

*RECEIVED
OCT
OGCR FOIA PA*

SUBJECT: Freedom of Information Act (FOIA) Request – Ms. Gloria Yelder

    The attached documents are of primary interest to your office. These documents concern Ms. Gloria Yelder's security clearance and her termination. Accordingly, we are referring them to your office for direct response. The requester has been notified of this referral and a copy of the referral letter is attached.

    Please note that this case is in litigation and that the records were extracted from a Privacy Act System of Records. A copy of the FOIA/PA request, complaint, and systems notice are attached for your information. If you have any questions regarding this matter, please contact Mrs. Angela Campagna at (703) 696- 2641 or Angela.Campagna.ctr@whs.mil.

        Will Kammer
        Chief

Attachment:
As stated

*ATTACHMENT !*

*Exhibit 2*



# DEFENSE SECURITY SERVICE
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

Ms. Gloria D. Yelder
1807 Eufauls Avenue
Birmingham, Alabama 35208

**NOV 2 8 2007**

**RE: FOIA/PA# 063-28**

Dear Ms. Yelder:

On October 29, 2007 the Defense Security Service (DSS) received your January 21, 2007 request for records and information concerning you, as referred to DSS by the U.S. Department of Defense, Office of Freedom of Information (Attachment 1).

Attachment 2 (305 pages) is a copy of all releasable DSS documents pertaining to you, as provided to DSS by the DoD Office of Freedom of Information. Where marked out with white correction tape (page 131), information has been withheld that is exempt from the mandatory disclosure provisions of the Freedom of Information Act, for the following reason:

a. Exemption (b)(6) is used to protect personal information or similar material pertaining to other individuals, any release of which would constitute a clearly unwarranted invasion of another individual's privacy.

Aside from the above- referenced withholding, nothing else from the documents have been withheld by DSS. However, since this one withholding constitutes a partial denial of information to you, you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Director, DSS, Attn: FOIA Appeal, 1340 Braddock Place, Alexandria, VA 22314-1651, within 30 days from receipt of this letter. In any such appeal, you should also provide a copy of this letter, along with sufficient justification upon which the Director may base a decision.

It should be noted that on February 9, 2007, DSS also received your January 21, 2007, request for information, as referred to us from Department of Defense, Office of Freedom Information. However, this referral only contained your 2 page letter to Washington Headquarters Services (WHS) requesting information pertaining to your security clearance. By letter dated June 7, 2007, DSS responded to your January 21, 2007, request by providing you a copy of all DSS investigative documents pertaining to you, **as maintained by DSS.**

Please understand that DSS personnel security investigations (PSI) are retained by DSS for 15 to 25 years from the date of the individual's last investigation. DSS employee records, to include Employee Relations, Inspector General, Security, and EEO records

*Exhibit 3*

are generally only retained by DSS for 5 years.  If however any of these employee records (IG, HR EEO, etc.) were at one time provide to the security clearance adjudicators (WHS) for adjudication purposes, they could very well be maintained in the employee's **adjudication file** for 15 to 25 years, depending on the outcome of the adjudication.  Consequently, it is conceivable that a DSS employee's **adjudicative records** (WHS) could have documents which are no longer being maintained by the originating agency.  Do not assume that case adjudicators make their clearance determinations based solely on what may be contained in a PSI file.  WHS adjudication "Record Source categories" are identified in their published System of Records Notice located on their web site at: www.defenselink.mil/privacy/notices/osd/DWHSP29.html.

We appreciate having been able to serve you in this matter.  If you have any questions regarding the contents of the information released to you, please feel free to contact my office at (703) 325-9450.  Instructions on amendment or appeal actions can be obtained from the DSS web site (www.dss.mil) under the FOIA/PA link.

Sincerely,

LESLIE R. BLAKE
Chief, FOIA/PA

Attachments
As stated

December 9, 2007

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 781-3454
(205) 613-6680

Director, Defense Security Service, (DSS)
Attn: FOIA Appeal
1340 Braddock Place
Alexandria, VA. 22314-1651

Reference: FOIA/PA# 063-28

Dear Director:

For the second time, this is my appeal to the decision of Ms. Leslie Blake and DSS, in which information about my security clearance was withheld.

Exemption (b)(6) is used to protect personal information or similar material pertaining to other individuals, any release of which would constitute a clear unwarranted invasion of another individual's privacy. Exemption (b) (6) does not give the agency the right to conceived and to confuse or frustrate the information so I am unable to receive a fair opportunity to defend myself. No one considered Exemption (b) (6) on my behalf when the fraudulent information about me was released to Washington Headquarters Services or when co-workers or other individuals, who had nothing to do with my investigation, had excess to my files and records.

In November 1998, DSS knowingly withheld information from me, (administrative inquires, the second periodic reinvestigation, EEO complaint information as well as the true information by which my security clearance was revoked.). Now nine years later DSS is still using basically the same excuses they used in 1998. DSS now states that the information has been destroyed although this information has been in litigation since 2000.

Since 1998, I have been trying to resolve whatever issues were placed in my security clearance by DSS without my knowledge or participation. I have been held accountable for information that I knew nothing about, never seen, or never have been interviewed.

The information I received from Ms. Blake and DSS in November 1998, is different from the information I received in June 2007 and in her letter dated November 26, 2007

Exhibit 4                                    1

The information I received in 1998, which I knew nothing about, reflect two investigations. There was an administrative inquiry that was labeled as an exhibit and second administrative inquiry that was labeled as a section. There were two counseling session from Phil Bowling, my former second line supervisor. One of the counseling sessions was labeled as an exhibit and the other was labeled as a section. There were two memo or record; one labeled as an exhibit and one labeled as a section. There were two statements from Subject; one was labeled as an exhibit, the other was labeled as a section, although I did not give two statements. There was a polygraph examination that had my 1989 periodic reinvestigation case control number. There was a statement of reasons in that information. There were documents in which the signatures of WHS were not identifiable.

The information I received in November 2007, only had one administrative inquiry, one counseling session from Phil Bowling, one memo of record, one statement of Subject and no polygraph examination. I still have all the information that was sent to me from Ms. Blake and DSS.   Also there were pictures of Ms. Whitfield in November 2007which her face was blacked out. These pictures were not in the information in 1998.

In December 1994, I found out that I was well aware of the allegations of an affair and the role it played in my security clearance and termination from employment. An email dated December 13, 1995, from an anonymous spouse, (a spouse to date, who was never identified to me), complained to DSS because I was supposedly having or had an affair with her husband. This email started the investigation which led to the chain of events and then my termination. The only thing about this statement was that I was not having an affair nor was I ever asked or told about an affair while I was a special agent with DSS. The first time I saw the email was three months after I was terminated.

In Ms. Blake's statement on page two, "If however any of these employee records, (IG, HR, EEO, etc.) were at one time provide to the security clearance adjudicators (WHS) for adjudication purposes, they could well be maintained in the employee' adjudication file for 15 or 25 years, depending on the outcome of the adjudication. Consequently it is conceivable that a DSS employee's adjudicative records, (WHS) could have documents which are no longer being maintained by the originating agency. Do not assume that case adjudicators make their clearance determination based solely on what may be contained in a PSI file." I did not understand this statement because periodic reinvestigation is retained for 15 years with the agency who conducted the investigation. In 1996, I do not know of anyone but DSS conducting periodic reinvestigations or other investigations on their employees. It appears that there is a blame game between DSS and WHS and I am the one caught in the middle without knowing what is going on.

My request is for the truth and all my records including the information about an alleged affair that caused the revocation of my security clearance and termination from employment. No one could have been hurt as much as me by the decision that was made to protect everyone else.

I look forward to your immediate response. Enclosed is response from Leslie Blake, dated November 26, 2007.

Sincerely,

Gloria D. Yelder

Enclosures:

cc: US District Clerk
U.S. Attorney" Office



**DEFENSE SECURITY SERVICE**
1340 Braddock Place
Alexandria, VA 22314-1561

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208

JAN 3 2008

**RE: FOIA/PA# 197-28 (2) Appeal**

Dear Ms. Yelder:

This correspondence is to acknowledge receipt of your letter dated December 9, 2007, appealing Defense Security Service (DSS) information you claim to have been withheld from you.

The DSS is processing your request in accordance with the provisions of the FOIA/PA and upon completion a written response will be forwarded to you. We must inform you however, that due to a significant number of pending FOIA/PA actions a final response determination within the statutory time period (20 days) **may** not be possible.

Your request will be processed in a multitrack processing system, based on a first-in, first-out concept. If you can demonstrate to this office a compelling need for the information within the next 30 days, DSS may consider expedited processing. Enclosed is an information sheet on Multitrack Processing and what constitutes a compelling need.

We appreciate being of assistance to you in this matter. Should you have any additional questions, please feel free to contact my office at (703) 325-9450.

Sincerely,

LESLIE R. BLAKE
Chief, FOIA/PA

Enclosure

Exhibit 5

January 17, 2008

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 613-6680

Defense Security Service
1340 Braddock Place
Alexandria, VA 22314

RE: FOIA/PA# 063-28

Dear Director:

This is an appeal for expediting my request for records under the Freedom of Information Act, 5 U.S.C. 552.

On December 9, 2007, I made an FOI Act appeal request to DSS for all my information pertaining to my security clearance and termination from employment. On November 26, 2007, Ms. Blake, Chief, FOIA/PA Office sent me 305 pages of releasable DSS documents pertaining to me. The FOIA Office stated that all other information is exempt from mandatory disclosure under the FOIA, for the following reason:

    a. Exemption (b)(6) is used to protect personal information or similar material pertaining to other individuals, any release of which would constitute a clearly unwarranted invasion of another individual's privacy. But Exemption (b)(6) did not apply when DSS disclosed the fraudulent information to Washington Headquarters Services without my knowledge or participation. Copies of my requests and denials have been previous provided.

It has been almost ten years when I first asked for my records. In September 2005, I again requested my records and for those records to be expedited because I was in litigation, but I never received an answer from your office.

In December 9, 2007, I appealed your denial of my records. On January 3, 2008, your office stated that due to significant number of pending FOIA/PA actions a final response determination within the statutory time period (20 days) may not be possible. This was the same response I received over two years ago.. Again this period of request clearly exceeds the 20 days provided by the stature, thus I deem the request denied.

The information I have requested is clearly releasable under the FOI Act and, in my opinion, may not validly be protected by any of the Acts exemptions since this information is about my security clearance.

Exhibit 6

In May 2005, Department of Defense stated that they knew in 2001, that I did not know about the investigations/information when I filed my EEO complaints and during the pendency of my security clearance process. But still none of these investigations were provided to me.

I trust that upon re-consideration, you will reverse the decision denying me access to my security clearance material and grant my original request. Especially since WHS sent DSS this information in October 2007. (See Attached Memo from WHS, dated October 23, 2007.)  However, if you deny this appeal, I intend to continue to pursuit this in court.

I would appreciate your expediting the consideration of my appeal in every way possible because I have asked for the information for so long, but all my requests have been ignored.  I have been denied the proper information/investigations about my security clearance and termination, causing me to never received substantial due process before or after I was terminated as a special agent with DSS.  In any case, I will expect to receive your decision within 20 business days, as required by the stature.

I certify that the reasons I seek expedited review are true and correct to the best of my knowledge and belief.


Sincerely,

Gloria D. Yelder

Enclosure:

UNITED STATES POSTAL SERVICE

NO VA 220

18 DEC 2007 PM 6 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Gloria Yelder
1807 Eufaula Ave
Bham AL 35208

:11

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Director
1342 Briarbeck Pl
Mc Kendree, Va
25814

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
                                    12/22

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Express Mail
   ☒ Certified Mail   ☐ Return Receipt for Merchandise
   ☐ Registered
   ☐ Insured Mail
   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)
   7007 3020 0003 1803 8556

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Exhibit 7



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | $0.58 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.38 |

Sent To  Drecter DSS

Street, Apt. No.; or PO Box No.  340 Brackleck Pl

City, State, ZIP+4  Alexandria Va 32374

PS Form 3800, August 2006                    See Reverse for Instructions

Executive Office for United States Attorneys
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757 FAX: 616-6478 (www.usdoj.gov/usao)*

Requester: Gloria Yelder _____     Request No.: 07-3728-R _____

Government Component that referred material: United States Department of Defense     NOV 8 0 2007

Dear Requester:

This is in reply to your Freedom of Information Act/Privacy Act request of May 16, 2007. Records were referred to us by the government component above for direct response to you.

The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | | Section 552a |
|---|---|---|---|---|
| [  ] (b)(1) | [  ] (b)(4) | [  ] (b)(7)(B) | | [ X ] (j)(2) |
| [  ] (b)(2) | [  ] (b)(5) | [  ] (b)(7)(C) | | [  ] (k)(2) |
| [ X ] (b)(3) | [  ] (b)(6) | [  ] (b)(7)(D) | | [  ] (k)(5) |
| _____ | [  ] (b)(7)(A) | [  ] (b)(7)(E) | | [  ] _____ _____ |
| _____ | | [  ] (b)(7)(F) | | |

We have reviewed approximately __14__ page(s) of material:

__5__ page(s) are being released in full (RIF);
_____ page(s) are being released in part (RIP);
__9__ page(s) are withheld in full (WIF) and
_____ pages were duplicate copies of material already processed.

This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

Form No. 024 - 3/07

Exhibit 8

December 9, 2007

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 613-6680
(205) 781-3454

Office of Information & Privacy
U. S. Department of Justice
1425 New York Avenue Suite 11050
Washington D.C. 20530-0001

Request No.:  073728-R

Dear Office of Information & Privacy:

This is my appeal to the decision of November 30, 2007 where information was withheld
from me. In your letter, you stated that your office reviewed approximately 14 pages of
material and 5 pages were being released in full (RIF) and 9 pages were being withheld in
full (WIF) based on Sections 552(b) (3) and 552a (j) (2). Please be advised that there
were no documents enclosed with this letter, only my initial complaint. Exemptions
should not be used when those exemptions precludes an individual from receiving due
process and a right to properly defend against the information.

In 1996 fraudulent information was placed in my security clearance without my
knowledge and participation causing the revocation of my security clearance, damage to
my reputation and termination of my employment. I was never given the opportunity to
defend myself while I was a special agent with the Defense Security Service.

In December 2004, it was provided in the court that I was well aware of the allegations of
the affair and its effects on my security clearance and termination from employment. In
May 2005, I was informed that the Department of Defense knew that I was unaware of
these investigations in my security clearance during my EEO complaints and during the
pendency of my security clearance process. To date, I still have not been provided that
information about the alleged affair or the information which caused the revocation of my
security clearance and my termination from employment, although I have continued to
ask.

I look forward to your immediate response.

Sincerely,

Exhibit 9

Gloria D. Yelder

Enclosures

cc: US District Clerk's Office
U.S. Attorney

"FOIA Appeal"



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_ _Washington, D.C. 20530_

DEC 2 7 2007

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, AL 35208

Re: Request No. 07-3728-R

Dear Ms. Yelder:

This is to advise you that your administrative appeal from the action of the Executive Office for United States Attorneys was received by this Office on December 20, 2007.

The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **08-0615**. Please mention this number in any future correspondence to this Office regarding this matter.

We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

Sincerely,

Priscilla Jones
Supervisory Administrative Specialist

Exhibit 10

STATEMENT OF GLORIA D. YELDER

1. I, Gloria D. Yelder, was a special agent with the Department of Defense, Defense Security Service, (DSS), from 1982 to August 1998, when my security clearance was unjustly and unfairly revoked and I was terminated from my employment.

2. Without my knowledge in December 1995, a complaint about an alleged affair was lodged against, but never brought to my attention while I was a special gent with DSS, although the alleged affair became a part of my security clearance.

3. In December 2004, I found out that I was well aware of the allegations of an affair and the effects on my security clearance and termination from employment.

4. In October 2005, DSS stated that this email about the alleged affair started the chain of events which led to the revocation of my security clearance and termination from employment as a special agent.

5. It also appeared that a criminal investigation was conducted on me.

6. I have never been arrested, detained, questioned by any law enforcement agencies about any criminal act.

7. I have never had a warrant issued for my arrest.

8. Before all this information was placed in my security clearance, I had an impeccable record.

9. I would never intentionally do anything to hurt anyone, but I was never given that chance to respond to the fraudulent information that was placed in my security clearance.

I swear, on the **penalty of perjury**, that I was not having an alleged affair or affair before, during or after this email in 1995, but this email about the alleged affair was sent to Washington Headquarters Services. I swear that I have never committed any criminal acts.

Respectfully,

*Gloria D. Yelder*

Gloria D. Yelder
Signed this 31st Day of January 2008

*Exhibit 10*