## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GLORIA D. YELDER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1639 (RJL)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **DEFENSE, <u>et al.</u>** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56, Defendants, the United States

Department of Defense ("DoD"), the Defense Security Service ("DSS"), and the Washington

Headquarters Service ("WHS") [1] hereby file their motion for summary judgment.  Summary

judgment is required because plaintiff has failed to properly exhaust her administrative remedies

as required prior to instituting this action.  In addition, because the federal defendants have fully

discharged their obligations under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"),

and there are no material issues in dispute, the defendants are hereby entitled to judgment as a

matter of law.  A statement of material facts and a proposed order accompany this motion.

Plaintiff should take notice that any factual assertions contained in the accompanying

declarations and other attachments in support of defendants' motion will be accepted by the

---

[1]Because DSS and WHS are separate agencies of the DoD, DoD is the proper defendant in this action.  <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>see also</u> Declaration of Leslie R. Blake dated October 29, 2007 ("1st Blake Decl.") ¶ 2; <u>see also</u> Declaration of William Kammer ("Kammer Decl.") ¶ 1.

Court as true unless the plaintiff submits her own affidavit or other documentary evidence contradicting the assertions in defendants' attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992);  see also Local Rule 7(h)[2] and Fed. R. Civ. P. 56(e).  Fed. R. Civ. P. 56(e) provides that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

_____
/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____
/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910

---

[2]Requiring that oppositions to motions for summary judgment "shall" be accompanied by a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  LCvR 7(h).

Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS

Of Counsel:

Roland Meisner
Assistant General Counsel
Office of General Counsel
Defense Security Service

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GLORIA D. YELDER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1639 (RJL)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **DEFENSE, <u>et al.</u>** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

Defendants, the United States Department of Defense ("DoD"), the Defense Security Service ("DSS"), and the Washington Headquarters Service ("WHS")[1] hereby file their motion for dismissal and for summary judgment. Dismissal is required because plaintiff has failed to exhaust her administrative remedies prior to bringing this action. Further, because the federal defendants have fully discharged their obligations under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and there are no material issues in dispute, the defendants are hereby entitled to judgment as a matter of law.

## <u>BACKGROUND</u>

Plaintiff, Gloria Yelder, has instituted this action against three named defendants

---

[1]Because DSS and WHS are separate agencies of the DoD, DoD is the proper defendant in this action. <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>see also</u> Declaration of Leslie R. Blake dated October 29, 2007 ("1[st] Blake Decl.") ¶ 2; <u>see also</u> Declaration of William Kammer ("Kammer Decl.") ¶ 1.

regarding various requests she submitted pursuant to the FOIA.  The facts concerning the several requests plaintiff has made pursuant to the FOIA have been fully set forth in defendants' Statement of Material Facts as to Which There is No Genuine Issue, attached to this motion.

## ARGUMENT

### I.     Plaintiff Has Failed to Exhaust Her Administrative Remedies.

#### A.     Standard of Review

Defendants move for dismissal of certain portions of plaintiff's complaint under Rule 12(b)(6) for failure to state a claim.  "A FOIA suit is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if a plaintiff fails to exhaust his administrative remedies prior to initiating a lawsuit."  Elliot v. United States Dep't of Agriculture, No. Civ.A. 06-240, 2007 WL 1302588, at *2 (D.D.C. May 2, 2007).  A court should dismiss a complaint for failure to state a claim when the complaint fails "to raise a right to relief above the speculative level."  See, e.g., Bell Atlantic v. Twombly, 1275 S. Ct. 1955, 1956 (2007).  The court need not, however, accept as true the plaintiff's legal conclusions.  See Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997).  "While in this Circuit, the exhaustion requirement is not jurisdictional, . . . as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar."  Bestor v. C.I.A., No. Civ.A. 04-2049, 2005 WL 3273723, at *3 (D.D.C. Sept. 1, 2005) (citations and internal quotation marks omitted).

Where, as here, there are materials attached to the request for dismissal, the Court should treat such motion as one brought pursuant to Federal Rule of Civil Procedure 56(c).  Summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate when the record shows that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In determining whether a genuine issue of material fact exists, the trier of fact must view all the facts, and the reasonable inferences to be drawn from them, in a light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

**B.    Plaintiff Has Failed to Exhaust Her Administrative Remedies.**

Prior to filing a lawsuit, a FOIA requester is required to fully exhaust her administrative remedies.  Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986).  A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the FOIA, including: (1) failure to provide the required proof of identity, Summers v. United States Dep't of Justice, 999 F.2d 570, 572-73 (D.C. Cir. 1993); (2) failure to reasonably describe the records being sought, Gillin v. IRS, 980 F.2d 819, 822-23 (1st Cir. 1992); (3) failure to comply with fee requirements, Trueblood v. United States Dep't of Treasury, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) **failure to administratively appeal a denial of information**, Oglesby v. United States Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990) (emphasis added).  Where a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full administrative exhaustion, her lawsuit is subject to immediate dismissal.  Id.

"The statutory scheme in the FOIA specifically provides for an administrative appeal process following an agency's [response to] a FOIA request."  Bestor, 2005 WL 3273723, at *2.  Furthermore, "[c]ourts have consistently confirmed that the FOIA requires exhaustion of this

3

appeal process <u>before</u> an individual may seek relief in the courts." <u>Id.</u> (citation and internal quotation marks omitted) (emphasis added).

Notably, while paragraphs 11 and 27 of the amended complaint specifically allege that plaintiff appealed the responses to her 2005 and 2007 FOIA requests that were sent to DSS, plaintiff still does not contend that she ever filed any administrative appeal concerning her January 21, 2007 request, which was the request sent to WHS.  And, indeed, as of the filing of WHS' prior motion for dismissal, WHS' OFOI had not received any appeal from plaintiff concerning WHS' response to her January 21, 2007 request.  Kammer Decl. ¶ 2.  Because plaintiff has not filed an administrative appeal of her 2007 FOIA request, dismissal for failure to state a claim, or alternatively, summary judgment, is required.  <u>Hinojosa v. Department of Treasury</u>, No. Civ.A. 06-0215, 2006 WL 2927095, at *3 (D.D.C. Oct. 11, 2006) (holding that plaintiffs' "failure to avail themselves of the applicable administrative remedies is fatal to their [FOIA] claims in this Court."); <u>Hornbeck Offshore Transportation LLC v. United States Coast Guard</u>, No. Civ.A. 04-1724, 2006 WL 696053, at *24 (D.D.C. Mar. 20, 2006) (granting defendant's motion for summary judgment where "[p]laintiff has failed to meet its exhaustion requirements with respect to the FOIA Exemption 6 withholdings, a 'condition precedent' to its appeal of those redactions in this Court."); <u>Bestor</u>, 2005 WL 3273723, at *4 (holding that where there was a failure to exhaust, "plaintiff has failed to justify the court's exercise of subject matter jurisdiction in this case, and likewise because plaintiff has failed to state a claim upon which relief can be granted, the defendant's motion to dismiss will be granted.").

Furthermore, as it concerns DSS, despite her unsupported assertions in her amended complaint, Am. Compl. ¶ 11, plaintiff never filed any appeal regarding her 2005 FOIA request at

4

issue in this case.  1st Blake Decl. ¶ 7.  Specifically, a search of the DSS FOIA/PA database

disclosed no record of the DSS FOIA/PA office having received an appeal from plaintiff in

September 2005.  Id.  Had the DSS FOIA/PA office received an appeal letter from plaintiff, DSS

would have responded to plaintiff as is its policy.  Id.  Because plaintiff has not filed

administrative appeals of the agencies' responses to her respective FOIA requests, dismissal for

failure to state a claim is required.  Hinojosa v. Department of Treasury, No. Civ.A. 06-0215,

2006 WL 2927095, at *3 (D.D.C. Oct. 11, 2006) (holding that plaintiffs' "failure to avail

themselves of the applicable administrative remedies is fatal to their [FOIA] claims in this

Court."); Bestor, 2005 WL 3273723, at *4 (holding that where there was a failure to exhaust,

"plaintiff has failed to justify the court's exercise of subject matter jurisdiction in this case, and

likewise because plaintiff has failed to state a claim upon which relief can be granted, the

defendant's motion to dismiss will be granted.").

II.    **Defendants are Entitled to Summary Judgment.**

    A.    **Standard of Review**

       In general, summary judgment is the procedural vehicle by which most FOIA actions are

resolved.  See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases

should be handled on motions for summary judgment, once the documents in issue are properly

identified.").  While the defendant has the burden of proof on all material issues related to the

merits of any claimed FOIA exemptions, summary judgment is to be freely granted where there

are no material facts in dispute and the agency is entitled to judgment as a matter of law.  See,

e.g., Alyeska Pipeline Serv. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988); Hayden v. National

Security Agency, 608 F.2d 1381, 1386-87 (D.C. Cir. 1979) (summary judgment appropriate in

FOIA cases on the basis of affidavits).  Under the FOIA, which supplies the applicable

substantive legal principles, defendant in this case bears the burden of proving three elements:

(1)  "**adequacy of the search**" -- that is, the search for responsive documents was

adequate;

(2)  "**applicability of exemptions**" -- that is, the information withheld from release

falls within an exemption from the FOIA's general requirement that information

be released; and

(3)  "**reasonable segregability**" -- that is, the "reasonably segregable," non-exempt

information has been disclosed after deletion of the exempt information.

See Public Employees for Environmental Responsibility v. United States Dep't of the Interior,

No. Civ.A. 06-182, 2006 WL 3422484, at *8 (D.D.C. Nov. 28, 2006) (holding that agency had

"met its summary judgment burden by demonstrating that it fully discharged its FOIA obligations

by conducting a reasonable and adequate search for documents, properly invoking applicable

FOIA exemptions, and releasing all reasonably segregable factual materials from responsive

documents.") (citations omitted).  See also NYC Apparel FZE v. United States Customs &

Border Protection, 484 F. Supp. 2d 77, 86 (D.D.C. 2007) ("'[A]gency entitled to summary

judgment if no material facts are in dispute and if it demonstrates that each document that falls

within the class requested has been produced . . . or is wholly[, or partially] exempt [from

disclosure].'") (quoting Students Against Genocide v. Dep't of State, 257 F.3d 828, 833

(D.C.Cir. 2001).   In this case, the federal defendants have fully discharged their obligations

under the FOIA.

6

**B.     DSS Conducted a Proper Search for Records.[2]**

In responding to a FOIA request, an agency is under a duty to conduct a good faith search for responsive records, "using methods which can be reasonably expected to produce the information requested." Oglesby v. United States Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted); Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Services, 844 F. Supp. 770, 776 (D.D.C. 1993). This "reasonableness" standard focuses on the method of the search, not its results. Cleary, Gottlieb, 844 F. Supp. at 777 n.4 (citing Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The search standards under the FOIA do not require an agency to prove that all responsive documents have been located. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citation omitted). Instead, "the search need only be reasonable; it does not have to be exhaustive." Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing Shaw v. Dep't of State, 559 F. Supp. 1053, 1057 (D.D.C. 1983)). An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Nor is there a requirement that the search be perfect. Meeropol, 790 F.2d at 956. The fundamental question is not "'whether there might exist any other documents responsive to the request, but rather whether the *search* for

---

[2]In this case, DSS conducted the search for records utilizing DoD's Defense Clearance and Investigative Index ("DCII"), a consolidated listing of files held by investigative components of the Defense Department and the Joint Personnel Adjudication System ("JPAS"), a joint DoD system identifying security clearance adjudicative actions. 1st Blake Decl. ¶ 4. DCII/JPAS is a joint DoD system, and therefore DCII listings also reflect other DoD component investigative or adjudicative actions not associated with DSS. Id.

those documents was *adequate*.'" <u>Steinberg</u>, 23 F.3d at 551 (citation omitted). "In demonstrating the adequacy of the search, the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citations omitted).

In this case, DSS utilized DoD's Defense Clearance and Investigative Index ("DCII"), a consolidated listing of files held by investigative components of the Defense Department and the Joint Personnel Adjudication System ("JPAS"), a joint DoD system identifying security clearance adjudicative actions. 1st Blake Decl. ¶ 4. The DCII and JPAS are searched by the individual's full name and social security number. <u>Id.</u> Upon receipt of a FOIA/PA request, the request is logged into the DSS FOIA/PA database by the individual's name, the date the request was received, and the nature of the request. <u>Id.</u> The DCII/JPAS and other necessary indices are then searched by the individual's name and social security number to determine if DSS maintains an investigative or administrative file concerning the individual. <u>Id.</u> Should DCII/JPAS or one of the other automated record systems identify a file, the file is ordered from the appropriate office or DSS records repository. <u>Id.</u> Upon completion of a FOIA/PA action, the database is annotated with the date the case was closed and the FOIA/PA exemptions claimed, if information was withheld from the requester. <u>Id.</u>

In response to plaintiff's 2005 FOIA request, a search of the automated indices to DSS' central records system files located no IG, EEO, Office of Security, or Administrative Inquiry files pertaining to plaintiff. 1st Blake Decl., Ex. 2. In its response to plaintiff, DSS explained that IG, Security, and Administrative Inquiry files are only retained for 5 years from the date of the last action. <u>Id.</u> Further, agency EEO files are only retained for four years from the date the last

8

action closed.  Id.  Thus, the only records that were located regarding plaintiff were her Personnel

Security Investigative files, which had been previously released to plaintiff in November, 1998.

Id.  However, as "FOIA is only directed at requiring agencies to disclose those 'agency records'

for which they have chosen to retain possession or control . . ." and does "not obligate agencies

to create or retain documents . . . ." the fact that certain records had not been retained by DSS

does not violate the FOIA.  See Canning v. United States Dep't of Defense, 499 F. Supp. 2d 14,

23 (D.D.C. 2007) (internal quotation marks and citations omitted).

    Concerning the 2007 request, DSS located and provided to plaintiff a copy of plaintiff's

JPAS records that reflected that her security clearance was revoked in 1998 by WHS and a copy

of plaintiff's 1996 Periodic Reinvestigation (Case # 96192-DXC-1817-1E3).  1st Blake Decl., Ex.

4.  The searches conducted in this case were reasonable and revealed the pertinent documents

responsive to plaintiff's requests.

    **C.    Plaintiff Was Provided With All Information in Response to Her 2005 and
            January 2007 Requests.**

    In response to plaintiff's July, 2005 request, DSS responded to plaintiff in a letter dated

August 11, 2005, and indicated that the only records that were located regarding plaintiff were

her Personnel Security Investigative files, which had been previously released to plaintiff in

November, 1998.  1st Blake Decl., Ex. 2.  Concerning her March 2007 request that was referred

to DSS by WHS, by letter dated June 7, 2007, DSS provided plaintiff with copies of all DSS

documents pertaining to her.  1st Blake Decl. ¶ 6; Ex. 4 (Letter to plaintiff dated June 7, 2007).

These documents included, but were not limited to, a copy of plaintiff's JPAS records that

reflected that her security clearance was revoked in 1998 by WHS and a copy of plaintiff's 1996

9

Periodic Reinvestigation (Case # 96192-DXC-1817-1E3).  Ex. 4.  **Nothing was withheld from this production.**  Id.  While paragraph 16 of plaintiff's amended complaint alleges that plaintiff, by letter dated March 2007, again requested from DSS a copy of all documents regarding her security clearance revocation, Am. Compl. ¶ 16, a search of DSS FOIA/PA records disclosed no record of a March 2007 FOIA request from plaintiff to DSS.  1st Blake Decl. ¶ 9.  It should be noted, however, that as it regards plaintiff's January 21, 2007 request to WHS, WHS notified plaintiff that it was referring a portion of plaintiff's request to DSS.  Id.; see also 1st Blake Decl., Ex. 5.

Plaintiff contends that DSS provided plaintiff with a copy of the investigation that had previously been provided "and failed to provide a copy of the second periodic re-investigation which was used by Washington Headquarters and the agency as a basis for the decision to revoke her security clearance and terminate her employment."  Am. Compl. ¶ 17.  Based on a review of DSS FOIA/PA records and record searches in DCII, DSS is unable to discern what is meant by plaintiff's reference to a "second periodic re-investigation."  1st Blake Decl. ¶ 10.  Exhibit 4 attached to the first Blake Declaration, which is DSS' response to plaintiff's January 21, 2007 letter referred to DSS by WHS, clearly reflects the investigation disclosed to plaintiff was plaintiff's 1996 periodic reinvestigation ("PR"), case number 96192-DXC-1817-1E3.  Id. Although the case control number ("CCN") on the first page of the document is difficult to read, the first page of the DD Form 1879 in the "For DIS USE ONLY" section clearly indicates the CCN as 96192-DXC-1817-1E3.  1st Blake Decl., Ex. 4.  Plaintiff's reference to a "1b3" case and "O changed to C" appears to be from a typo on the report of investigation by the investigative agent, which, to DSS' knowledge, had previously been explained to plaintiff on more than one

10

occasion.  1st Blake Decl. ¶ 10.  PR #96192-DXC-1817-1E3 is the only PR case DSS maintains

on plaintiff.  Id.[3]

By letter dated June 7, 2007, DSS again furnished plaintiff with a copy of

plaintiff's 1996 PR, the only PR DSS conducted on plaintiff.  Id. ¶ 11.  No information was

withheld.  Blake Decl., Ex. 4.  Plaintiff has received all the documents responsive to her requests

and therefore summary judgment is warranted.

### D.    DSS Properly Withheld Portions of a Single Page Pursuant to Exemption 6.

By letter dated December 9, 2007, plaintiff appealed DSS' November 28, 2007 FOIA

response to her January 21, 2007 request, case number 063-28.  2nd Blake Decl. ¶ 6.  In a letter

dated March 13, 2008, the Director of DSS denied in full plaintiff's December 9, 2007 appeal.

2nd Blake Decl., Ex. 5.  Notably, this letter reveals that DSS had disclosed in full all releasable

DSS documents (305 pages) "with the exception of a single page (attached) which DSS sanitized

with correction tape to protect the identity of other individuals."  Id.[4]

DSS withheld information from this single sheet pursuant to FOIA Exemption 6, which

---

[3]Notably, in a letter dated November 23, 1998, DSS provided plaintiff with all releasable portions of her Personnel Security Investigative ("PSI"), IG, Employee Relations ("ER"), EEO and Office of Security file.  1st Blake Decl. ¶ 11; Ex. 6 (Letter to plaintiff dated November 23, 1998).  In accordance with FOIA/PA requirements, plaintiff was provided with her appeal rights for those portions of the records that may have been withheld pursuant to applicable FOIA/PA exemptions.  Id.  By letter dated March 26, 1999, DSS responded to plaintiff's December 1998 appeal and plaintiff was advised of plaintiff's rights to seek judicial review if plaintiff was dissatisfied with the Director's decision.  Ex. 7 (Letter to plaintiff dated March 26, 1999).  Plaintiff never filed a FOIA action challenging these withholdings.  Blake Decl. ¶ 11.

[4]To the extent that plaintiff implies that all information was withheld, this allegation is simply false.  See, e.g., Am. Compl.  ¶ 26 ("In 2007, DSS stated that the information was being withheld for the following reason: a.  Exemption (b)(6)").

protects personal information pertaining to other individuals, the release of which would constitute a clearly unwarranted invasion of privacy.  Id.  In reaching its decision to redact the identity of the person featured in the photographs, DSS looked at whether the information applied to a particular individual, whether disclosure of the information would constitute a clearly unwarranted invasion of personal privacy, and whether there existed a public interest in disclosure that would outweigh a privacy interest.  Id.  DSS concluded that because the photographs in question apply to individuals other than plaintiff and are of an intimate sexual nature, which could be potentially embarrassing to the parties concerned if their identities were made public, there was a sufficient privacy interest to warrant non-disclosure.  Id.  Furthermore, because the photographs shed no light on the agency's performance of its statutory duties, there is no public interest in disclosure.  Id.  Furthermore, plaintiff failed to explain how disclosure of the identities of the persons in the photographs would serve the public interest.  Id.

        The agency properly sanitized portions of the photographs that were released to plaintiff pursuant to Exemption 6.  Exemption 6 permits the withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has read Exemption 6 broadly, concluding the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.'"  Judicial Watch v. Food & Drug Admin., 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting United States Dep't of State v. Washington Post Co., 456 U.S. 595, 601 (1982)).  Thus, information meets the threshold requirement of Exemption 6 if it "applies to a particular individual."  Washington Post Co., 456 U.S. at 602.  Clearly, the information at issue here meets

12

this threshold requirement.  See New York Times Co. v. National Aeronautics & Space Admin.,

920 F.2d 1002, 1006 (1990) ("The information need not be intimate; the threshold for application

of Exemption 6 is crossed if information merely 'applies to a particular individual.'") (quoting

Washington Post Co., 456 U.S. at 602).

Furthermore, the privacy interests implicated outweigh any public interest in the

disclosure of the information.  The photographs depict individuals other than plaintiff and shed

no light on the agency's performance of its functions.  The photographs are of an intimate sexual

nature and could be potentially embarrassing to the parties concerned if made public.  2nd Blake

Decl., Ex. 5.  This is precisely the type of information Exemption 6 is designed to protect from

disclosure.  See, e.g., Judicial Watch, Inc., 449 F.3d at 153 (withholding the names of agency

personnel and private individuals and companies who worked on the approval of a controversial

drug); New York Times Co., 920 F.2d at 1005 (holding that a tape recording of the last words of

the Space Shuttle Challenger crew, which "reveal[ed] the sound and inflection of the crew's

voices during the last seconds of their lives . . . contains personal information the release of

which is subject to the balancing of the public gain against the private harm at which it is

purchased.").  Cf. United States Dep't of Justice v. Reporters Committee for Freedom of the

Press, 489 U.S. 749, 780 (1989) (holding that criminal "rap sheet" was exempt from disclosure

under Exemption 7(C)).

Finally, as the requester seeking this information, plaintiff bears the burden of explaining

how disclosure is in the public interest.  Notably, however, nowhere does plaintiff explain what

public interest would be served by disclosure.  NARA v. Favish, 541 U.S. 157, 174-75 (2004)

("Only when the FOIA requester has produced evidence sufficient to satisfy [the public interest

13

standard] will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interest in the requested records."). For these reasons, DSS properly sanitized a single page to withhold the identity of persons other than plaintiff pursuant to Exemption 6.

### E.     EOUSA Properly Withheld a Document Pursuant to Exemption 3.

WHS referred a fourteen page document to DOJ's EOUSA. After reviewing the records, EOUSA, by letter dated November 30, 2007, informed plaintiff that it was releasing five pages and withholding one nine page document in full. See Kornmeier Decl., ¶ 5; Kornmeier Decl., Ex. A. The document EOUSA withheld is a letter dated February 5, 2001, from John C. Bell, Assistant United States Attorney, to the Honorable John E. Ott, United States Magistrate Judge for the Northern District of Alabama. Kornmeier Decl. ¶ 6. A copy of this document was sent to Mr. Bell's client, Amy Brown, Assistant General Counsel, Defense Security Service. Id. The letter is labeled "Confidential – By Hand Delivery" and was submitted pursuant to the January 16, 2001 Order of Mediation in the Gloria Yelder v. United States Dep't of Defense, case number CV-00-N-0458. Kornmeier Decl. Ex. C.

Exemption 3 allows the withholding of information prohibited from disclosure by another statute if one of two requirements is met: the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Here, there are two statutes that permit the withholding of this information. First, 28 U.S.C. § 652(d), specifically provides that each district court shall provide by local rule for the confidentiality of "alternative dispute resolution processes and . . . prohibit disclosure of

14

confidential dispute resolution communications." Thus, the statute encompasses confidential

dispute resolution communications, such as the one present here and satisfies Exemption 3's

requirement that the applicable status establish "particular criteria for withholding or refers to

particular types of matters to be withheld."[5]

Second, 5 U.S.C. section 574(j) explicitly provides that "A dispute resolution

communication which is between a neutral and a party and which may not be disclosed under this

section shall also be exempt from disclosure under section 552(b)(3)."[6] This absolute language

qualifies this statutory provision under Exemption 3's first category of statutes (i.e., those leaving

no discretion on the issue), and makes it apparent that EOUSA properly withheld a confidential

mediation statement pursuant to FOIA Exemption 3. See, e.g., Linn v. United States Dep't of

Justice, No. Civ.A. 92-1406, 1995 WL 631847, at *30 (D.D.C. Aug. 22, 1995) (holding that

"absolute language" of applicable statute eliminated "any possibility of agency discretion" . . .

[t]hus the provision satisfies the requirement of Exemption 3 . . . .").

## CONCLUSION

For the reasons set forth above, defendants request that the Court grant their motion for

summary judgment and enter judgment in their favor.

---

[5]Here, local civil rule 16.1(c) of the Northern District of Alabama Court provides that the Court may "direct" litigants to participate in alternative dispute resolution processes.

[6]5 U.S.C. section 574 generally protects confidential communications submitted to a neutral party during alternative means of dispute resolution in the administrative process.

Respectfully submitted,


/s/ Jeffrey A. Taylor
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


/s/ Michelle N. Johnson
_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
    United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS


Of counsel:

Roland Meisner
Assistant General Counsel
Office of General Counsel
Defense Security Service

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Defendants' Motion for Summary Judgment, the statement of material facts not in genuine dispute, and the accompanying declarations and exhibits were mailed by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Gloria D. Yelder, <u>pro</u> <u>se</u>
1807 Eufaula Avenue
Birmingham, AL 35208


on this <u>28th</u> day of March, 2008


/s/

_____
MICHELLE N. JOHNSON

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **GLORIA D. YELDER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1639 (RJL)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **DEFENSE, <u>et al.</u>** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE</u>**

Pursuant to LCvR 56.1 and 7(h), defendants Department of Defense ("DoD"), Defense

Security Service ("DSS") and Washington Headquarters Service ("WHS")[1] respectfully submit

this statement of material facts as to which there is no genuine issue in support of their motion

for dismissal or, alternatively, summary judgment.

**I.      <u>Plaintiff's FOIA Request to WHS</u>**

1.      Washington Headquarters Service ("WHS") is a separate component of the DoD's Office

of the Secretary of Defense.  Declaration of William T. Kammer ("Kammer Decl.") ¶ 1.

2.      On February 1, 2007, WHS' Office of Freedom of Information ("OFOI") received a

---

[1] The proper defendant in this action is the DoD because WHS is a separate component of
the DoD's Office of the Security of Defense ("OSD").  <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>see also</u>
Declaration of William Kammer ("Kammer Decl.") ¶ 1.  Defendant DSS is also a separate
agency of the DoD, operating under the direction, authority and control of the Under Secretary of
Defense (Intelligence).  <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>see also</u> Declaration of Leslie R. Blake
dated October 29, 2007 ("1st Blake Decl.") ¶ 2.

request pursuant to the Freedom of Information Act ("FOIA") from plaintiff dated January 21, 2007.  Kammer Decl. ¶ 3; Kammer Decl., Ex. 1 (Letter from plaintiff dated January 21, 2007).

3.      Plaintiff's FOIA request sought "all information pertaining to my security clearance, including Periodic Reinvestigation, (PR), Case Controller Number 96192-DXC-1817-1E3, as well as any investigations or information pertaining to my security clearance."  Kammer Decl., Ex. 1.

4.      A response to plaintiff's FOIA request was tasked to the Human Resources Directorate ("HRD") of WHS.  Kammer Decl. ¶ 3.  Additionally, on February 6, 2007, a copy of plaintiff's request was forwarded to Defense Security Service ("DSS") for an additional search.  Kammer Decl., Ex. 2 (Letter to DSS dated February 6, 2007).

5.      On October 23, 2007, OFOI responded to plaintiff's FOIA request by providing 405 pages of responsive information.  Kammer Decl.  ¶ 3; Kammer Decl. Ex. 3 (Letter to plaintiff dated October 23, 2007).  No information was withheld from this release.  Kammer Decl.  ¶ 3.

6.      Also on October 23, 2007, 341 pages of responsive material were referred to DSS and 8 pages of responsive information were referred to the Department of Justice for review and direct reply to the requester.  Id.  See also Kammer Decl. Ex. 4 (Letters to DSS and Executive Office of United States Attorneys/Department of Justice).

7.      As of November 2007, OFOI has not received any appeal from plaintiff regarding the October 23, 2007 release of records.  Kammer Decl.  ¶ 3.

II.     **WHS' Referral of Documents to the Department of Justice**

8.      On October 23, 2007, DoD referred records potentially responsive to plaintiff's FOIA request to the Department of Justice, Executive Office for United States Attorneys ("EOUSA").

Declaration of John W. Kornmeier ("Kornmeier Decl.") ¶ 4.[2]

9.    After reviewing the records, by letter dated November 30, 2007, EOUSA informed Ms.

Yelder that it was releasing five pages and withholding one nine-page document.  Kornmeier

Decl. ¶ 5.

10.    Ms. Yelder filed an administrative appeal with the Office of Information and Privacy,

which affirmed EOUSA's decision to withhold the document.  Id.  ¶ 5; see also Kornmeier Decl.

Ex. B.

11.    The document EOUSA withheld is a letter dated February 5, 2001, from John C. Bell, an

Assistant United States Attorney ("AUSA"), to the Honorable John E. Ott, United States

Magistrate Judge for the Northern District of Alabama, with a copy sent to Mr. Bell's client,

Amy Brown, Assistant General Counsel, Defense Security Service.  Id.  ¶ 6.  No copy of this

letter was provided to the opposing party.  Id.

12.    This letter is labeled "Confidential – By Hand Delivery" and was provided pursuant to the

January 16, 2001 Order of Mediation in the matter styled Gloria Yelder v. United States

Department of Defense, case number CV-00-N-0458-S.  Id.  ¶ 6; see also Kornmeier Decl., Ex. C

---

[2]An explanation is required regarding the exact number of pages that were referred to
EOUSA.  While Mr. Kammer's declaration indicates that eight pages were referred to EOUSA,
EOUSA indicates in its response letter dated November 30, 2007 that fourteen pages were in fact
referred.  Compare Kammer Decl. ¶ 3 with Kornmeier Decl., Ex. A.  According to Mr.
Kornmeier's declaration, examination of the five pages released in full shows them to be the
FOIA complaint in the instant case, which was apparently included in the DoD referral package
for information purposes and not as a responsive document.  Kornmeier Decl.  ¶ 5 & n.1.  The
remaining nine page document that was withheld in full is the letter addressed in Mr.
Kornmeier's declaration.  Examination of that document indicates that it actually consists of
seven pages.  Id.  It appears that EOUSA and DoD either miscounted the actual number of pages
or included cover pages in the count.  Id.  EOUSA confirmed with Angela Campagna of DoD
that the one responsive document DoD sent was a seven page letter, dated February 5, 2001,
from John C. Bell to the Honorable John E. Ott, which is the document that was withheld.  Id.

(copy of the January 16, 2001 order).  This letter, which is confidential under the mediation process, reveals the Government's position in the case to the mediator.  Kornmeier Decl. ¶ 6.

13.    EOUSA asserts Exemption 3 of the FOIA to justify its withholding of this document. Id. ¶ 7.  Exemption 3 exempts from mandatory release information specifically exempted from disclosure by another statute if that statute either (A) requires that the matter be withheld from the public without discretion or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).

14.    EOUSA asserts FOIA Exemption 3 to withhold the mediation document under 28 U.S.C. § 652(d) and 5 U.S.C. § 574(j).  Kornmeier Decl. ¶ 8.

15.    Under 28 U.S.C. § 652(d), which concerns alternative dispute resolution, each district court shall provide by local rule for the confidentiality of the mediation process and prohibit disclosure of confidential communications.  The January 16, 2001 Order referred the Yelder matter to mediation under the "Plan," which requires confidentiality.  See Local Rule 16.1(c) of the Northern District Court of Alabama.  See also Kornmeier Decl. ¶ 9.

16.    Under 5 U.S.C. § 574(j), a confidential alternative dispute resolution communication is exempt from disclosure under Exemption 3 of the FOIA.

III.    **Plaintiff's FOIA Requests to DSS**

17.    The Defense Security Service ("DSS") is a separate agency of the Department of Defense ("DoD") and operates under the direction, authority, and control of the Under Secretary of Defense (Intelligence).   Declaration of Leslie R. Blake dated October 29, 2007 ("1st Blake Decl.") ¶ 2.

18.    DSS was established by the Secretary of Defense effective January 1, 1972, and was

4

responsible for two major defense programs.  Id. ¶ 3.  First, DSS conducted all personnel security investigations for DoD components and agencies, and when authorized, also conducted investigations for other U.S. Government activities.  Id.  Second, DSS is responsible for the Defense Industrial Security Program for Safeguarding Classified Information.  Id.  In February 2005, the personnel security function of the agency was transferred outside DoD to the U.S. Office of Personnel Management.  Id.

19.    Upon receipt of a FOIA/PA request, the request is logged into the DSS FOIA/PA database by the individual's name, date the request was received, and the nature of what the requester is seeking.  Id.  Due to the large volume of requests received each year by DSS and DSS' limited resources, DSS processes requests on a "first-in, first-out" basis.  Id.

20.    If a requester can demonstrate a compelling need for the information, his/her request may be expedited and processed out of sequence.  Id.  Compelling need generally refers to information which if not received on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual or a threatened loss of substantial due process rights.  Id.

### A.    DSS' Search for Records

21.    In conducting a search for investigative material responsive to a Freedom of Information Act ("FOIA")/Privacy Act ("PA") request, DSS utilizes DoD's Defense Clearance and Investigative Index ("DCII"), a consolidated listing of files held by investigative components of the Defense Department and the Joint Personnel Adjudication System ("JPAS"), a joint DoD system identifying security clearance adjudicative actions.  1st Blake Decl. ¶ 4.  The DCII and JPAS are searched by the individual's full name and social security number.  Id.

22.    DSS file listings are retained in the DCII and JPAS by DSS for 15 to 25 years from the date of the last investigation or adjudication.  Id.  Accordingly, any individual who has been the subject of a DSS investigation in the past 15 to 25 years would be identified.  Id.

23.    Once the index identifies an individual as having a DSS investigation with a dossier, a copy of that document or dossier can be ordered from the DSS records repository.  Id.  Favorable non-field investigations such as electronic National Agency Checks ("NACs") for lower level clearances do not contain paper files so the DCII only reflects the fact that a NAC was completed and the date of completion.  Id.  DCII/JPAS is a joint DoD system so DCII listings could also reflect other DoD component investigative or adjudicative actions not associated with DSS.  Id.

24.    Depending on the  request, the DSS FOIA/PA office can also search automated indices maintained by individual offices within the agency, i.e., DSS Inspector General or EEO databases.  Id.

25.    DSS maintains two separate Branch Offices for processing FOIA/PA requests.  Id. ¶ 5. The PA branch located in Linthicum, Maryland, generally processes requests submitted under the PA for DSS investigative records.  Id.  The DSS HQ office located in Alexandria, Virginia, generally processes all requests submitted under the FOIA for documents/records other than investigative material.  Id.  Notwithstanding, the DSS HQ FOIA office will assist in processing PA requests when needed and also handles all FOIA/PA requests concerning amendments and appeals.  Id.

26.    Upon receipt of a FOIA/PA request, the request is logged into the DSS FOIA/PA database by the individual's name, the date the request was received, and the nature of the request.  Id.  The DCII/JPAS and other necessary indices are then searched by the individual's

name and social security number to determine if DSS maintains an investigative or administrative file concerning the individual.  Id.  Should DCII/JPAS or one of the other automated record systems identify a file, the file is ordered from the appropriate office or DSS records repository.  Id.

27.    Upon completion of a FOIA/PA action, the database is annotated with the date the case was closed and the FOIA/PA exemptions claimed, if information was withheld from the requester.  Id.  Closed FOIA/PA files are stored in the respective Branch Office for a period of 5 yeas from the date the case was closed.  Id.  After 5 years, the files are purged and destroyed.  Id.  If the individual requester is determined to be a frequent requester, some portion of the requester's prior FOIA/PA actions may be incorporated into the requester's most current FOIA/PA file.  Id.

**B.    Plaintiff's FOIA Requests**

**1.    The July 2005 Request**

28.    Upon receipt of plaintiff's complaint in this action, the DSS FOIA/PA office searched the FOIA/PA database under plaintiff's name and located two FOIA cases filed by plaintiff within the past 5 years.  Id. ¶ 6.  FOIA Case Number 134-25 is a July 5, 2005 facsimile from plaintiff to DSS attorney Roland Meisner requesting documents pertaining to herself.  Id.; Blake Decl., Ex. 1 (Facsimile from plaintiff dated July 5, 2005).  Specifically plaintiff requested: three periodic case reinvestigation files; her 1996 polygraph examination; the Inspector General ("IG") investigative file; the administrative inquiries; the complete EEO investigation completed by James Pearce; and EEO investigation file DSS-98-042-41-R.  Blake Decl., Ex. 1.

29.    By letter dated August 11, 2005, DSS responded to plaintiff and indicated that a search of

7

the automated indices to DSS' central records system files located no IG, EEO, Office of

Security, or Administrative Inquiry files pertaining to plaintiff.  Blake Decl., Ex. 2.  The letter

explained that IG, Security, and Administrative Inquiry files are only retained for 5 years from

the date of the last action.  Id.  Further, agency EEO files are only retained for four years from the

date the last action closed.  Id.  Thus, the only records that were located regarding plaintiff were

her Personnel Security Investigative files, which had been previously released to plaintiff in

November, 1998.  Id.

30.     Paragraph 10 of plaintiff's amended complaint states that she requested documents by

letter dated August 2005.  Amended Complaint ("Am. Compl.") ¶ 10.  A search of DSS'

FOIA/PA database disclosed no request from plaintiff dated August 2005.  1st Blake Decl. ¶ 6.

DSS does have record of plaintiff's July 2005 request.  Id.; Ex. 1.

31.      DSS' response letter to plaintiff was dated August 11, 2005.  Id.; Ex. 2.  In this response,

DSS indicated that plaintiff's Personnel Security Investigative files had been located, and that

those records had been previously released to plaintiff in November, 1998.  Ex. 2.

32.     Paragraph 11 of plaintiff's amended complaint asserts that plaintiff appealed the decision

to the Director of DSS and received no response.  Am. Compl. ¶ 11.  A search of the DSS

FOIA/PA database disclosed no record of the DSS FOIA/PA office having received an appeal

from plaintiff in September 2005.  Blake Decl. ¶ 7.  Had the DSS FOIA/PA office received an

appeal letter from plaintiff, DSS would have responded to plaintiff as is its policy.  Id.

### 2.     The 2007 Requests

33.     By letter dated February 6, 2007, WHS referred a subsequent FOIA request from plaintiff

to DSS.  1st Blake Decl. ¶ 6; 1st Blake Decl., Ex. 3 (Letter to plaintiff dated February 6, 2007).

Plaintiff was notified that a portion of her request was being referred to DSS.  Id.

34.     By letter dated June 7, 2007, DSS provided plaintiff with copies of all DSS documents pertaining to her.  Blake Decl. ¶ 6; Blake Decl., Ex. 4 (Letter to plaintiff dated June 7, 2007). These documents included, but were not limited to, a copy of plaintiff's JPAS record that reflected that her security clearance was revoked in 1998 by WHS and a copy of plaintiff's 1996 Periodic Reinvestigation (Case # 96192-DXC-1817-1E3).  Blake Decl. Ex. 4.  Nothing was withheld from this production.  Id.  The letter further noted that this production was the third time since 1998 that DSS had disclosed this same information to plaintiff and/or her attorney and that further copies would not be provided unless plaintiff could demonstrate a valid reason for needing another copy.  Id.

35.     Paragraphs 12 and 13 of plaintiff's amended complaint indicate that plaintiff sent a subsequent request to DSS for documents by letter dated January 21, 2007, and had received no response.  1st Blake Decl. ¶ 8.  A search of DSS FOIA/PA records located no request to DSS from plaintiff dated January 21, 2007.  Id.

36.     DSS FOIA/PA records do indicate that plaintiff submitted a letter to WHS dated January 21, 2007.  Blake Decl., Ex. 5 (Letter from plaintiff dated January 21, 2007).  WHS in turn referred plaintiff's request to DSS, which was received by DSS on February 9, 2007.  1st Blake Decl. ¶ 8.  By letter dated June 7, 2007, DSS responded to plaintiff's January 21, 2007 letter to WHS and again provided plaintiff with a copy of all investigative documents maintained by DSS pertaining to plaintiff.  Blake Decl., Ex. 4

37.     Paragraph 16 of plaintiff's amended complaint alleges that plaintiff, by letter dated March 2007, again requested from DSS a copy of all documents regarding her security clearance

revocation.  Am. Compl. ¶ 16.  A search of DSS FOIA/PA records disclosed no record of a

March 2007 FOIA request from plaintiff to DSS.  1st Blake Decl. ¶ 9.  It should be noted,

however, that as it regards plaintiff's January 21, 2007 request to WHS, WHS notified plaintiff

that it was referring a portion of plaintiff's request to DSS.  Id.; see also 1st Blake Decl., Ex. 5.

38.     In paragraph 17 of her amended complaint, plaintiff contends that DSS provided plaintiff

with a copy of the investigation that had previously been provided "and failed to provide a copy

of the second periodic re-investigation which was used by Washington Headquarters and the

agency as a basis for the decision to revoke her security clearance and terminate her

employment."  Am. Compl. ¶ 17.  Based on a review of DSS FOIA/PA records and record

searches in DCII, DSS is unable to discern what is meant by plaintiff's reference to a "second

periodic re-investigation."  1st Blake Decl. ¶ 10.

39.     Exhibit 4, which is DSS' response to plaintiff's January 21, 2007 letter referred to DSS

by WHS, clearly reflects the investigation disclosed to plaintiff was plaintiff's 1996 periodic

reinvestigation ("PR"), case number 96192-DXC-1817-1E3.  Id.  Although the case control

number ("CCN") on the first page of the document is difficult to read, the first page of the DD

Form 1879 in the "For DIS USE ONLY" section clearly indicates the CCN as 96192-DXC-1817-

1E3.  1st Blake Decl., Ex. 4.  Plaintiff's reference to a "1b3" case and "O changed to C" appears

to be from a typo on the report of investigation by the investigative agent, which, to DSS'

knowledge, had previously been explained to plaintiff on more than one occasion.  1st Blake

Decl. ¶ 10.  PR #96192-DXC-1817-1E3 is the only PR case DSS maintains on plaintiff.  Id.

40.     Notably, in a letter dated November 23, 1998, DSS provided plaintiff with all releasable

portions of her Personnel Security Investigative ("PSI"), IG, Employee Relations ("ER"), EEO

and Office of Security files.  Id. ¶ 11; Ex. 6 (Letter to plaintiff dated November 23, 1998).  In

accordance with FOIA/PA requirements, plaintiff was provided with her appeal rights for those

portions of the records that may have been withheld pursuant to FIA/PA exemptions.  Id.

41.    By letter dated March 26, 1999, DSS responded to plaintiff's December 1998 appeal and

plaintiff was advised of plaintiff's rights to seek judicial review if plaintiff was dissatisfied with

the Director's decision.  Ex. 7 (Letter to plaintiff dated March 26, 1999).  No such FOIA/PA

litigation was filed by plaintiff.  1st Blake Decl. ¶ 11.

42.    DSS, by letter dated June 7, 2007, again furnished plaintiff with a copy of plaintiff's 1996

PR, the only PR DSS conducted on plaintiff.  Id.

43.    On December 11, 2007, DSS received plaintiff's letter dated December 9, 2007,

requesting an appeal of information withheld from plaintiff by DSS in a November 28, 2007

FOIA action, case numbered 063-28.  2nd Blake Decl.  ¶ 6.  Plaintiff's December 9, 2007 letter

was logged into the DSS FOIA database and assigned FOIA/PA case number 197-28.  Id.

44.    By letter dated January 3, 2008, DSS provided plaintiff with an acknowledgment letter

specifically stating that due to a significant number of pending FOIA/PA actions, a final response

within the statutory period (20 days) might not be possible.  Id.  However, this letter informed

plaintiff that if she could demonstrate a compelling need for the information within the next 30

days, DSS might consider expediting the processing of her request.  Id.

45.    By letter received January 28, 2008 and dated January 17, 2008, plaintiff requested

expedited processing of her December 9, 2007, appeal.  2nd Blake Decl., Ex. 4.  Plaintiff's request

for expedited processing was filed with plaintiff's initial appeal, FOIA/PA case number 197-28.

2nd Blake Decl.  ¶ 6.

46.     On March 6, 2007, Mr. Blake was notified that plaintiff had filed an amended complaint

which incorporated plaintiff's allegation that DSS had failed to respond to the December 9, 2007

appeal.  Id.  ¶ 7.

47.     Thereafter, DSS processed plaintiff's December 9, 2007 appeal letter.  The Director of

DSS denied in full plaintiff's appeal by way of letter dated March 13, 2008.  2nd Blake Decl., Ex.

5.

48.     In its letter denying plaintiff's appeal, DSS revealed that it had disclosed in full all

releasable DSS documents (305 pages) "with the exception of a single page (attached) which

DSS sanitized with correction tape to protect the identity of other individuals."  Id.

49.     DSS withheld information from this single sheet pursuant to FOIA Exemption 6, which

covers personal information pertaining to other individuals, the release of which would constitute

a clearly unwarranted invasion of privacy.  Id.

50.     In reaching its decision to redact the identity of the person featured in the photographs,

DSS looked at whether the information applied to a particular individual, whether disclosure of

the information would constitute a clearly unwarranted invasion of personal privacy, and whether

there existed a public interest in disclosure that would outweigh a privacy interest.  Id.

51.     DSS concluded that because the photographs in question apply to individuals other than

plaintiff and are of an intimate sexual nature disclosing these pictures could be potentially

embarrassing to the parties concerned if their identities were made public.  Id.  Furthermore,

because the photographs shed no light on the agency's performance of its statutory duties, there

is no public interest in disclosure.  Id.

Respectfully submitted,


/s/ Jeffrey A. Taylor
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


/s/ Michelle N. Johnson
_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS



Of counsel:

Roland Meisner
Assistant General Counsel
Office of General Counsel
Defense Security Service

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

GLORIA D. YELDER,                    )
                                     )
              **Plaintiff**       )
                                     )    Civil Action No: 1:07-CV-01639
    v.                           )
                                     )
UNITED STATES DEPARTMENT             )
OF DEFENSE,                          )
ROBERT M. GATES,                     )
Secretary of Defense                 )
1000Defense Pentagon                 )
Washington, DC 20301-1000            )
                                     )
And                                  )
                                     )
DEFENSE SECURITY SERVICE             )
1340 Braddock Place,                 )
Alexandria, VA 22314-1651            )
                                     )
And                                  )
                                     )
WASHINGTON HEADQUARTERS )
SERVICE                              )
1155 Defense Pentagon                )
Washington, D.C. 20301-1155          )
                                     )
            **Defendants.**    )
                                     )
_____        )

## DECLARATION OF LESLIE R. BLAKE

I, Leslie R. Blake, declare the following to be true and correct.

1.     I am the Chief of the Office of Freedom of Information and Privacy (FOIA/PA) for the Defense

Security Service.  In this capacity, I am responsible for the management of the DSS FOIA/PA Program

1  and its assigned resources. I have held this position since November 1996 and am familiar with its
2  operations.

4  2.      As an organization, DSS is a separate agency of the Department of Defense (DoD) operating
5  under the direction, authority, and control of the Under Secretary of Defense (Intelligence).

7  3.      DSS was established by the Secretary of Defense effective January 1, 1972, and was responsible
8  for two major defense programs. First, DSS conducted all personnel security investigations for
9  Department of Defense components and agencies, and when authorized, also conducted investigations for
10 other U.S. Government activities. Second, DSS is responsible for the Defense Industrial Security
11 Program for Safeguarding Classified Information. In February of 2005 the Personnel Security
12 Investigative function of the agency was transferred outside DOD to the U.S. Office of Personnel
13 Management.

15 4.      I have received and reviewed plaintiffs' complaint with respect to DSS' failure to provide
16 plaintiff with information requested under the Freedom of Information and Privacy Act(s).

18      The DSS method of searching for investigative material responsive to a FOIA/PA request
19 involves the use of DOD's Defense Clearance and Investigative Index (DCII), a consolidated listing of
20 files held by investigative components of the Defense Department and the Joint Personnel Adjudication
21 System (JPAS), a joint DoD system identifying security clearance adjudicative actions. The DCII and
22 JPAS are searched by the individual's full name and Social Security Number. DSS file listings are
23 retained in the DCII and JPAS by DSS for 15 to 25 years from the date of the last investigation or
24 adjudication. Accordingly, any individual who has been investigated by DSS in the past 15 to 25 years
25 would be identified. Once the Index identifies an individual as having a DSS investigation with a
26 dossier, a copy of that document/dossier can be ordered from the DSS records repository. Favorable non
27 field investigations such as electronic National Agency Checks (NAC'S) for lower level clearances do not
28 contain paper files so the DCII only reflects the fact that a NAC was completed and the date of
29 completion. DCII/JPAS is also a Joint DOD system so DCII listings could reflect other DOD Component
30 investigative or adjudicative actions not associated with DSS. Depending on what is being requested, the

-2-

DSS FOIA/PA Office can also search automated indices maintained by individual offices within the agency, i.e., DSS Inspector General or EEO databases.

5.    DSS maintains two separate Branch Offices for processing FOIA/PA request. The Privacy Act (PA) Branch located in Linthicum, Maryland generally processes requests submitted under the PA for DSS investigative records. The DSSHQ office located in Alexandria, Virginia generally processes all requests submitted under the Freedom of Information Act (FOIA) for documents/records on other than investigative material. Notwithstanding, the DSSHQ FOIA Office will assist in the processing of PA requests when needed and also handles all FOIA/PA requests for amendments and appeals. Upon receipt of a FOIA/PA request, the request is logged into the DSS FOIA/PA database by the individual's name, date the request was received, and the nature of what the requester is seeking. The DCII/JAPS and other necessary indices are then searched by the individual's name and SSN to determine if DSS maintains an investigative or administrative file. Should DCII/JAPS or one of the other automated record systems identify a file, the file is ordered from the appropriate office or DSS records repository. Upon completion of a FOIA/PA action, the database is annotated with the date the case was closed and the FOIA/PA Exemptions claimed, if information was withheld from the requester. Closed FOIA/PA files are stored in the respective Branch Office for a period of 5 years from case closure date annotated in the FOIA/PA database. After 5 years the files are purged and destroyed. If the individual requester is determined to be a frequent requester, some portions of the requester's prior FOIA/PA actions may be incorporated into the requester's most current FOIA/PA file.

6.    Up receipt of plaintiffs' complaint, the DSS FOIA/PA Office searched the FOIA/PA database under plaintiffs' name and located two FOIA cases filed by plaintiff within the past 5 years. FOIA Case # 134-25 (Exhibit 1) is a July 5, 2005, facsimile from plaintiff to DSS attorney, Mr. Roland Meisner, requesting specific DSS documents. By letter dated August 11, 2005, (Exhibit 2) DSS responded to plaintiff indicating DSS no longer maintained some of the records plaintiff was requesting and that DSS had previously provided plaintiff the other requested documents in November of 1998. FOIA Case # 232-27 (Exhibit 3), is a February 6, 2007, referral from Washington Headquarters Service (WHS) requesting DSS respond directly to plaintiffs' request for documents pertaining to plaintiffs' security clearance and DSS investigation. By letter dated June 7, 2007, (Exhibit 4) DSS responded to plaintiffs'

-3-

1  request and again provided plaintiff with a copy of all investigative documents maintained by DSS
2  pertaining to plaintiff.

3

4  6.      Paragraph number 10 of plaintiffs' current complaint states that by letter dated August 2005,
5  plaintiff requested from DSS a copy of all documents.  A search of DSSs' FOIA/PA database disclosed
6  no request from plaintiff dated August 2005.  DSS does however have a request from plaintiff dated July
7  5, 2005 which is the appended Exhibit 1.  In paragraph number 11 of plaintiffs' complaint, plaintiff states
8  that by letter dated September 6, 2005, DSS informed plaintiff that it had located no documents
9  responsive to her request and that plaintiff could appeal the decision to the Director, DSS.  A search of
10  DSS FOIA/PA records disclosed no records of a response letter to plaintiff dated September 6, 2005.
11  Exhibit 2 reflects that DSSs' response letter to plaintiff was dated August 11, 2005, not September 2005
12  as plaintiff claims.

13

14  7.      In paragraph number 12 plaintiff states that by letter dated September 2005, plaintiff appealed the
15  decision to the Director, DSS and did not receive a response.  A search of the DSS FOIA/PA database
16  disclosed no record of the DSS FOIA/PA Office having received an appeal from plaintiff dated
17  September 2005.  Had the DSS FOIA/PA Office received an appeal letter from plaintiff, DSS, would
18  have responded to plaintiff, as is our policy.   It should also be noted that DSS received no record of a
19  complaint/court action from plaintiff regarding a lack of response by DSS to plaintiffs' claimed
20  September 2005 appeal letter.

21

22  8.      Plaintiff indicates in paragraphs 13 and 14 that by letter dated January 21, 2007, plaintiff sent a
23  subsequent request to DSS for documents, and has not yet received a response from DSS.  A search of
24  DSS FOIA/PA records located no request to DSS from plaintiff dated January 21, 2007.  DSS FOIA/PA
25  records (Exhibit 5) do however indicated that plaintiff submitted a letter dated January 21, 2007, to WHS
26  requesting records.  WHS in turn referred plaintiffs' request to DSS which was received by DSS on
27  February 9, 2007.  By letter dated June 7, 2007 (See Exhibit 4) DSS responded to plaintiff's January 21,
28  2007, letter to WHS and again provided plaintiff will a copy of all investigative documents maintained by
29  DSS pertaining to plaintiff.

30

9.      Paragraph number 17 of plaintiffs' complaint indicates that plaintiff, by letter dated March 2007, again requested from DSS a copy of all documents material to her security clearance revocation.  Again, a search of DSS FOIA/PA records disclosed no record of a March 2007 FOIA request from plaintiff to DSS.  It should be noted that in Exhibit 5 WHS informed plaintiff that WHS was sending to DSS plaintiff's January 21, 2007, request for records.

10.     Paragraph number 18 in plaintiffs' complaint states; "DSS, through a request from WHS, by letter dated June 7, 2007, again provided plaintiff with a copy of her investigation, CCN 96192-DXO-1817-1b3, "O changed to C" with ink and not CCN 96192-DXC-1817-1E3 which had previously been provided and failed to provide a copy of the second periodic reinvestigation which was used by Washington Headquarters and the agency as a basis for the decision to revoke her security clearance and terminate her employment".   Based on a review of DSS FOIA/PA records and record searches in DCII, I do not agree with plaintiffs' claims nor do I fully understand what plaintiff is trying to communicate with respect to a "second Periodic Reinvestigation."  Exhibit 4 which is DSSs' response to plaintiffs' January 21, 2007, letter referred to DSS by WHS clearly reflects the investigation disclosed to plaintiff was plaintiff's 1996 Periodic Reinvestigation (PR), Case number 96192-DXC-1817-1E3.   Although the Case Control Number (CCN) on the first page of the document (Warning page) is difficult to read, the first page of the DD Form 1879 in the "FOR DIS USE ONLY" section clearly indicates the CCN as 96192 DXC 1817 1E3.  Plaintiffs' references to a "1b3" case and "O changed to C" appears to be from a typo on the report of investigation by the investigative agent, which to the best of my knowledge had been previously explained to plaintiff on more than one occasion.  PR# 96192-DXC-1817-1E3 is the only PR case DSS maintains on plaintiff.

11.     In paragraph number 23, plaintiff claims that after years of request and inquires, the Defendants have failed to provide plaintiff with the information she has requested.  Speaking for DSS only, I feel DSSs' search for responsive records to plaintiffs' request and the information provided to plaintiff was adequate to satisfy our agency's obligation under the Freedom of Information and Privacy Act(s).  Beginning in 1998, DSS in a letter dated November 23, 1998 (Exhibit 6), provided to plaintiff all releasable portions of plaintiff's Personnel Security Investigative (PSI), Inspector General (IG) Employee Relations (ER), EEO, and Office of Security file.  In accordance with FOIA/PA requirements, plaintiff was provided with her appeal rights for those portions of the records which may have been withheld

-5-

1   pursuant to certain FOIA/PA Exemptions. By letter dated March 26, 1999 (Exhibit 7), DSS responded to

2   plaintiffs' December 1998 appeal and plaintiff was advised of plaintiffs' rights to seek judicial review if

3   plaintiff was dissatisfied with the Directors' decision. No such FOIA/PA litigation was filed by plaintiff.

4   Again in June of 2007, by letter dated June 7, 2007 (Exhibit 4), DSS again furnished plaintiff with a copy

5   of plaintiffs' 1996 Periodic Reinvestigation (PR), the only PR DSS conducted on plaintiff.

6

7

8   12.      Pursuant to 28 U.S.C. Sec. 1746, I declare under the penalty of perjury that the foregoing is true

9   and correct.

10

11

12

13

14

15                                  LESLIE R. BLAKE

16                                  Chief, FOIA/PA

17                                  Defense Security Service

18

19                                  Date: _10/29/07_____

20

21

22

23

24

25

26

27

28

29

30

*34-25*

***ROBERT SIMMS THOMPSON, P.C.***
***ATTORNEY & COUNSELOR AT LAW***
***308 NORTH ELM STREET***
***TUSKEGEE, ALABAMA 36083***

*Telecopier Number: (334) 727-5746*
*Telephone Numbers: (334) 727-6463 or (888) 727-6463*

JUL 5 2005

OGCF/FOIA/PA

TO: (ATTENTION)   *Mr. Minonner*

TELEFAX NUMBER:   *703 - 325 - 5991*

RE: _____

_____

DATE: _____    TIME _____ a.m. or p.m.

NO. OF PAGES: _____ (including cover page)

ORIGINAL DOCUMENT BEING TRANSMITTED:

_____     Will not be sent

_____     Will be sent by regular mail

Message:

CONFIDENTIALITY NOTICE

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY ME BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO ME AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

# Exhibit 1



Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, AL 35208
(205) 781-3454

TO: (ATTENTION)      Mr. Minogmer

TELEFAX NUMBER:   703-325-5991

RE:

DATE:      7-5-05
                              TIME _____ a.m. or p.m.
NO. OF PAGES:      3 (three)     (including cover page)

ORIGINAL DOCUMENT BEING TRANSMITTED:

_____     Will not be sent

_____     Will be sent by regular mail

| Message: |
| --- |
| |
| |
| |
| |
| |

### CONFIDENTIALITY NOTICE

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY
PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE
INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE
INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO
THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF
YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY
ME BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO ME AT THE ABOVE
ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

July 5, 2005

Gloria Dean Yelder
1807 Eufaula Avenue
Birmingham, Alabama 352-8
(205) 781-3454
(205) 324-0791

Mr., Mizer
Department of Defense
Defense Security Service
Alexandria, VirginiaFax-703-325-5991

Dear Mr. Mizer:

This is my request for the records we talked about on the telephone at mediation. Please send copies of the records as soon as possible.

Thanks in advance for your immediate response. If you need any additional information, please contact me at the following address.

Regards,

Gloria D. Yelder

July 5, 2005

This is my request under the Freedom of Information Act for records pertaining to me,

Gloria Dean Yelder, ▮▮▮▮▮▮▮▮▮▮, while I was a special agent with the Department

of Defense, Defense Security Service.

I am requesting the accurate, complete, true and unsanitized copies of the following
records including

all attachments:

1. Periodic Reinvestigations--Case Control Number, (CNN)

   CCN 96192-DXC-1817-1E3

   CCN 96192-DXO-1817-1b3  "0" changed to "C"

   CCN 96192-DXO-1817-1E3

2. The 1996 Polygraph Examination

3. The Inspector General, (IG), Investigation Case Number OIG95-098

4. The Administrative Inquires

5. The complete EEO Investigation by James Pearce, Case number ATL99DIO283E

6. EEO Investigation DSS-98-042-41-R

Signed: *Gloria Dean Yelder*

Gloria Dean Yelder

Date: 7-5-05

Witness: *R.m. Howard*  Date: 7-5-05

Witness: *Flora L Blackledge*  Date: 7-5-05



**DEFENSE SECURITY SERVICE**
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208

**AUG 1 1 2005**

RE: FOIA# 134-25

Dear Ms. Yelder:

This is in response to your fax dated July 5, 2005, requesting, pursuant to the Freedom of Information Act, access to Defense Security Service (DSS) information pertaining to yourself. Specifically, you had requested your DSS background investigation, Inspector General Investigation (#OIG95-098), Administrative Inquiry, and EEO Investigation records by a James Pearce and DSS (DSS-98-042-41-R).

Based on the information furnished, a search of the automated indices to our central records system files at DSS located no Inspector General (IG), EEO, Office of Security, or Administrative Inquiry files pertaining to you. Inspector General, Security, and Administrative Inquiry (AI) files are only retained for 5 years from the date of the last action. Agency EEO files are only retained for four years from the date the last action closed. Accordingly, the only records located identifiable with you are your Personnel Security Investigative files, which were previously release to you by this office in November 1998.

Should you wish this agency to furnish you with a second copy, please contact this office via email (leslie.blake@dss.mil) with your request. I would however like to point out that due to a very heavy workload and limited resources, it may take well over a year to respond to your request. If however you can demonstrate to this office a compelling need for the information, DSS may consider expedited processing. I have enclosed for your information a document identifying what constitutes a compelling need.

Although no records pertaining to EEO, Security, IG, and AI were located in our automated indices or via searches in their respective offices, we are required to inform you that you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Director, DSS, Attn: FOIA Appeal, 1340 Braddock Place, Alexandria, VA 22314-1651.

Should you have any questions concerning this response, please feel free to contact my office at (703) 325-9450.

Sincerely,

LESLIE R. BLAKE
Chief, FOIA/PA

Enclosure

# Exhibit 2





**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

FEB 0 6 2007



Ref: 07-FP-0075



MEMORANDUM FOR DEFENSE SECURITY SERVICE
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

SUBJECT: Freedom of Information/Privacy Act (FOIA/PA) Request – Ms. Gloria D. Yelder

    Attached is a two page request for records, if they exist, which may be under the purview of Defense Security Service. This FOIA/PA request concerns the revoking of Gloria D. Yelder's security clearance and her termination. Accordingly, we are referring it to your office for direct response to the requester. Also, the Washington Headquarters Service, Human Resources office is searching their files for responsive documents. The requester has been notified of this action.

    A copy of the requester's initial letter and a copy of the interim response sent to her from this office are attached for your information. If you have any questions regarding this matter, please contact Angela Campagna at (703) 696-2641 or angela.campagna.ctr@whs.mil.

*for* Will Kammer
Chief

Attachment:
As stated

**Exhibit 3**

**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

FEB 0 6 2007

Ref: 07-FP-0075

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, AL 35208

Dear Ms. Yelder:

This is in an interim response to your January 21, 2007, Freedom of Information/Privacy Act (FOIA/PA) request seeking "all information pertaining to my security clearance, including Periodic Reinvestigation, (PR), Case Control Number 96192 DXC-1817-1E3, as well as any investigations or information pertaining to my security clearance." We received your request February 1, 2007.

The Washington Headquarters Service, Human Resources office is searching for documents responsive to your request. However, the portion of your request concerning the Defense Security Service (DSS) falls under the control of DSS. Accordingly, we sent your request to them at the address provided below with the request that they respond directly to you. There are no assessable fees for this response in this instance.

Defense Security Service
Chief FOIA and Privacy
1340 Braddock Place
Alexandria VA 22314-1651

Sincerely,

Will Kammer
Chief



**DEFENSE SECURITY SERVICE**
1340 BRADDOCK PLACE
ALEXANDRIA. VA 22314-1651

Ms. Gloria D. Yelder                                    **JUN  7 2007**
1807 Eufaula Avenue
Birmingham, Alabama 35208

**RE:  FOIA/PA# 232-27**

Dear Ms. Yelder:

On February 9, 2007, your request to the Department of Defense, Washington
Headquarters Service (WHS), was appropriately referred to the Defense Security Service
(DSS) for response.  In your correspondence to WHS dated January 21, 2007, you were
requesting from them all information pertaining to your security clearance and DSS
investigative documents.

Enclosed is a copy of all Defense Security Service documents pertaining to you.  This
includes but is not limited to a copy of your Joint Personnel Adjudication System (JPAS)
record which reflects your security clearance was revoked in 1998 by WHS and a copy of
your 1996 Periodic Reinvestigation (Case# 96192-DXC-1817-1E3).  **Nothing has been
withheld from this enclosure.**

It should be noted that this is the third time since 1998 that DSS has disclosed this same
information to you or your attorney.  DSS will not provide you another copy unless you
can demonstrate to this agency a valid reason why you need another copy.

We appreciate having been able to serve you in this matter.  If you have any questions
regarding the contents of the information released to you, please feel free to contact my
office.

Sincerely,


LESLIE R. BLAKE                                       Enclosure
Chief, FOIA/PA


# Exhibit 4




# DEPARTMENT of DEFENSE
## DEFENSE INVESTIGATIVE SERVICE

FILE NO:

YELLOW SLIP// LEAN

F H22-76-7570        54/04/30 01
56192-DXC-1837-263

# WARNING

THIS FILE IS THE PROPERTY OF THE DEFENSE INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE DEFENSE INVESTIGATIVE SERVICE.

**SPECIAL INSTRUCTIONS:**

It is certified that the material in this file is being retained pursuant to DoD Directive 5200.27, DIS Regulation 20-2 and DIS Manual 28-2.

Date Acquired _____    Signature _____

**RETAIN FOR:**

| 60 Days | 1 Year | 15 Years | 25 Years | Permanent |
|---------|--------|----------|----------|-----------|

### FOR OFFICIAL USE ONLY

DIS Form 3
55 Feb

Previous edition will be used until exhausted.

**RETENTION CONTROL SHEET**

January 21, 2007

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 781-3454

Washington Headquarters Services
Department of Defense
1155 Defense Pentagon
Washington D. C. 20301-1155
Certified Mail

To Washington Headquarters Service:

I am Gloria Dean Yelder, DOBP: April 30, 1954, Prattville, Autauga, Alabama, SSN: ████████. I was a special agent with the Defense Security Service, (DSS), Department of Defense, (DoD) from Sept 1982 to August 1998, before my security clearance was revoked and I was terminated from my employment. I have recently found out that my security clearance was revoked due to an alleged affair and that I was supposedly well aware of the effects of the alleged affair on my security clearance and termination from employment.

Please be advised that I have never been interviewed, told nor have I received the above mentioned information or investigations, especially while I was employed as a special agent with the DoD, DSS. I am requesting all information pertaining to my **security clearance, including Periodic Reinvestigation, (PR), Case Controller Number 96192-DXC-1817-1E3, as well as any investigations or information pertaining to my security clearance.** I am well aware that Washington Headquarters Services revoked my security clearance based on the above mentioned PR and investigations conducted by DSS, my former employer.

I have received letters from my Congressman, Artur Davis and my senator, Senator Richard Shelby stating that DSS and Washington Headquarters Services would be more than happy to finally provide the above mentioned PR that caused the revocation of my security clearance and termination from employment.

# Exhibit 5

*Atty 10 707 02*

As an US citizen, I deserved the right to defend myself before my security clearance was revoked. In your letters, you stated that I was given due process which has never happened.

I look forward to your immediately response within twenty (20) days of receipt of this letter. If I am unable to get my records I was informed that I needed to come back to Congressman Davis and Senator Shelby's offices for assistance.

Thanks in advance for your cooperation. I hope we will be able to resolve this as soon as possible.

Sincerely,

Gloria D. Yelder

Robin Anderson
NOTARY

Ms. Gloria D. Yelder                                    **NOV 2 3 1998**
1807 Eufaula Avenue
Birmingham, Alabama   35208

RE:  PA #98-9053
FOIA #121-98(2)

Dear Ms. Yelder:

This correspondence is in furtherance to our letter dated July 13, 1998, wherein we acknowledged receipt of your request for information/documentation concerning you.

Enclosed you will find the following releasable information:

*Appended as Attachment (1), are the releasable portions of your Personnel Security Investigative (PSI) file.  However, information which originated with the Office of Personnel Management (OPM), has been referred to them for release determination and direct response to you.*

*Appended as Attachment (2), are the releasable portions of the Inspector General (IG) and Employee Relations (ER) files pertaining to an administrative inquiry.  Withheld from this release in accordance with 5 United States Code 552(b)(2)(high), is information which is related solely to the internal rules and practices of the agency.  Information has also been withheld in accordance with 5 United States Code (b)(5), as inter- and/or intra-agency information/documentation which is considered privileged in litigation primarily under the deliberative process privilege.*

*Appended as Attachment (3), is information which was held by the Office of Security pertaining to you.  No information has been withheld from this release.*

*Appended as Attachment (4), is information which was held by the Equal Employment Opportunity Office.  No information has been withheld from this release.*

In accordance with the auspices of the Freedom of Information Act, you have the right to appeal the above withholding decisions.  Should you wish to exercise this right, you may do so within 30 days from the date of this letter by writing to:  Director, DSS, FOIA Appeal, 1340 Braddock Place, Alexandria, Virginia  22314-1651.

We appreciate being of assistance to you.

Sincerely,

LESLIE R. BLAKE                                    (4) Attachments
Manager, Office of FOIA
and Privacy

**Exhibit 6**

Sydney/td20November98/c:Yelder.doc

**DEFENSE SECURITY SERVICE**
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

MAR 2 6 1999

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama  35208

RE:  PA #98-9053
     FOIA #121-98(2)

Dear Ms. Yelder:

Reference is made to your December 17, 1998, letter in which you appeal the decision of
the Defense Security Service (DSS), Office of FOIA and Privacy, to withhold certain
information contained in your investigative files. After a careful review of this matter, I
have determined that your appeal should be denied.

By request (DIS Form 30, "Request for Notification of Access to Personal Records")
received July 6, 1998, you requested that DSS provide you with your investigative files,
Periodic Reinvestigative files, and "all information including attachments, report of
administrative inquiry, statements, request for polygraph information." By letter dated
November 23, 1998, DSS provided you all releasable portions of your Personnel Security
Investigative (PSI) file, which included your Periodic Reinvestigations. **Nothing was
withheld from these records.** However, you were advised that information which
originated with the Office of Personnel Management (OPM) had been referred to them
for their review and direct response to you. This referral was made to OPM via letter
(attached) dated December 4, 1998. DSS also furnished you with all records which had
been maintained by the DSS Office of Security and the Equal Employment Opportunity
Office (EEOC). Again, **nothing was withheld from this material.** You were also
provided with all releasable portions of your Inspector General (IG) file and Employee
Relations (ER) files pertaining to an administrative inquiry. Withheld from these files
was information which related to the internal rules and practices of the agency and inter-
and/or intra-agency information which is considered privileged in litigation. These
withholdings were made pursuant to 5 United States Code (U.S.C.) 552(b)(2)(high) and 5
U.S.C. 552(b)(5).

Based on the information furnished and a review of your investigative file, to include
your Privacy Act file, I find DSS has already provided you with a copy of all releasable
records responsive to your Freedom of Information/Privacy Act[s] request. Concerning
information that was withheld, I will advise you that the essence of the information
contained the identities of DSS personnel and that courts generally have held that internal

**Exhibit 7**

routing notations possibly leading to identification of employees involved in decision making can be withheld under Exemption 5 (Cofield v. City of La Grange. No. 95-179, 1996 WL 32727, at 6 (D.D.C. Jan 24, 1996)). Therefore, I will not reverse Mr. Blake's initial decision.

Release determinations regarding information which originated with OPM can only be made by OPM. DSS has no authority to release these documents, so I will not modify Mr. Blake's decision to refer these documents to OPM for their decision.

If you are dissatisfied with this decision, you may seek judicial review in the United States District Court where you reside, where your principal place of business is located, where the records are maintained, or in the District of Columbia (5 U.S.C. 552 (a) (4)).

Sincerely,

STEVEN T. SCHANZER                                           Attachment
Director

1
2
3                    UNITED STATES DISTRICT COURT
4                    FOR THE DISTRICT OF COLUMBIA
5
6    GLORIA D. YELDER,              )
                                    )
7              Plaintiff            )
                                    )        Civil Action No: 1:07-CV-01639
8         v.                        )
                                    )
9    UNITED STATES DEPARTMENT       )
     OF DEFENSE,                    )
10   ROBERT M. GATES,               )
11   Secretary of Defense           )
     1000Defense Pentagon           )
12   Washington, DC 20301-1000      )
                                    )
13   And                            )
                                    )
14                                  )
     DEFENSE SECURITY SERVICE       )
15   1340 Braddock Place,           )
16   Alexandria, VA 22314-1651      )
                                    )
17   And                            )
                                    )
18   WASHINGTON HEADQUARTERS        )
19   SERVICE                        )
     1155 Defense Pentagon          )
20   Washington, D.C. 20301-1155    )
                                    )
21             Defendants.          )
                                    )
22   _____    )
23
24              DECLARATION OF LESLIE R. BLAKE
25
26   I, Leslie R. Blake, declare the following to be true and correct.
27
28
29   1.      I am the Chief of the Office of Freedom of Information and Privacy (FOIA/PA) for the Defense
30   Security Service.  In this capacity, I am responsible for the management of the DSS FOIA/PA Program

1  and its assigned resources. I have held this position since November 1996 and am familiar with its
2  operations.

4  2.    As an organization, DSS is a separate agency of the Department of Defense (DoD) operating
5  under the direction, authority, and control of the Under Secretary of Defense (Intelligence).

7  3.    DSS was established by the Secretary of Defense effective January 1, 1972, and was responsible
8  for two major defense programs. First, DSS conducted all personnel security investigations for
9  Department of Defense components and agencies, and when authorized, also conducted investigations for
10 other U.S. Government activities. Second, DSS is responsible for the Defense Industrial Security
11 Program for Safeguarding Classified Information. In February of 2005 the Personnel Security
12 Investigative function of the agency was transferred outside DOD to the U.S. Office of Personnel
13 Management.

15 4.    I have received and reviewed plaintiffs' amended complaint with respect to plaintiff's December
16 9, 2007, appeal to the Director, DSS.

18 5.    DSS maintains two separate Branch Offices for processing FOIA/PA request. The Privacy Act
19 (PA) Branch located in Linthicum, Maryland generally processes requests submitted under the PA for
20 DSS investigative records. The DSSHQ office located in Alexandria, Virginia generally processes all
21 requests submitted under the Freedom of Information Act (FOIA) for documents/records on other than
22 investigative material. The DSSHQ office also processes all amendment and appeal requests for both the
23 FOIA and PA. Upon receipt of a FOIA/PA request, the request is logged into the DSS FOIA/PA database
24 by the individual's name, date the request was received, and the nature of what the requester is seeking.
25 Due to the large volume of requests received each year by DSS and our limited resources, DSS processes
26 requests on a "first-in, first-out" basis. However, if the requester can demonstrate a compelling need for
27 the information, his or her request may be expedited and processed out of sequence. Compelling need
28 generally refers to information which if not received on an expedited basis could reasonably be expected
29 to pose an imminent threat to the life or physical safety of an individual or a threatened loss of substantial
30 due process rights.

6.      On December 11, 2007, (Exhibit 1) the DSS received plaintiff's letter dated December 9, 2007, requesting an appeal of information withheld from plaintiff by DSS in a November 28, 2007, FOIA action case numbered 063-28 (Exhibit 2). Plaintiff's December 9, 2007, was logged into the DSS FOIA database and assigned FOIA/PA case number 197-28.  By letter dated January 3, 2008, DSS provided plaintiff an acknowledgement of receipt of her appeal to the Director, DSS (Exhibit 3).  This acknowledgement letter specifically stated that due to a significant number of pending FOIA/PA actions a final response determination within the statutory time period (20 days) may not be possible.  However, if plaintiff could demonstrate a compelling need for the information within the next 30 days, DSS may consider expedited processing.  By letter received in this office on January 28, 2008, DSS received from plaintiff a letter dated January 17, 2008, requesting expedited processing of her December 9, 2007, appeal (Exhibit 4).  Plaintiff's request for expedited processing was filed with plaintiff's initial appeal, FOIA/PA case number 197-28.

7.      On March 6, 2007, I received word from DSS Office of General Counsel (DSSGC) that plaintiff had filed an amended complaint which referenced DSS's failure to respond to plaintiff's December 9, 2007, appeal to the DSS, Director.  Base on a review of plaintiff's amended complaint, plaintiff states in paragraph 38 states that DSS has not responded to the requested information in the required time frame.

8.      Although I did make it clear to plaintiff in my acknowledgement letter (Reference Exhibit 3) that DSS may not be able to respond to plaintiff's appeal in the statutory time period due to a backlog of FOIA/PA actions, after receipt of plaintiff's amended complaint and consultation with DSSGC, I made a discretionary decision to go ahead and process plaintiff's December 9, 2007, appeal to the Director, DSS.  In processing plaintiff's appeal action, I provided to the Director, DSS, plaintiff's appeal, a summary of the circumstances of the case, along with my rationale and supporting criteria for withholding certain information under FOIA Exemption (b) (6).  The Director, DSS denied in full plaintiff's December 9, 2007, appeal by way of letter dated  3 - 13 - 2008 (Exhibit 5).

9.      Pursuant to 28 U.S.C. Sec. 1746, I declare under the penalty of perjury that the foregoing is true and correct.

-3-

LESLIE R. BLAKE

Chief, FOIA/PA

Defense Security Service

Date:  3 - 14 - 2008

*197-28 (2)*
*Appeal*

December 9, 2007



Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 781-3454
(205) 613-6680



RECEIVED
DEC 1 1 2007
OGCF,FOIA/PA

Director, Defense Security Service, (DSS)
Attn: FOIA Appeal
1340 Braddock Place
Alexandria, VA. 22314-1651

Reference: FOIA/PA# 063-28

Dear Director:

For the second time, this is my appeal to the decision of Ms. Leslie Blake and DSS, in which information about my security clearance was withheld.

Exemption (b)(6) is used to protect personal information or similar material pertaining to other individuals, any release of which would constitute a clear unwarranted invasion of another individual's privacy. Exemption (b) (6) does not give the agency the right to conceived and to confuse or frustrate the information so I am unable to receive a fair opportunity to defend myself. No one considered Exemption (b) (6) on my behalf when the fraudulent information about me was released to Washington Headquarters Services or when co-workers or other individuals, who had nothing to do with my investigation, had excess to my files and records.

In November 1998, DSS knowingly withheld information from me, (administrative inquires, the second periodic reinvestigation, EEO complaint information as well as the true information by which my security clearance was revoked.). Now nine years later DSS is still using basically the same excuses they used in 1998. DSS now states that the information has been destroyed although this information has been in litigation since 2000.

Since 1998, I have been trying to resolve whatever issues were placed in my security clearance by DSS without my knowledge or participation. I have been held accountable for information that I knew nothing about, never seen, or never have been interviewed.

The information I received from Ms. Blake and DSS in November 1998, is different from the information I received in June 2007 and in her letter dated November 26, 2007

**Exhibit 1**    i

The information I received in 1998, which I knew nothing about, reflect two investigations. There was an administrative inquiry that was labeled as an exhibit and second administrative inquiry that was labeled as a section. There were two counseling session from Phil Bowling, my former second line supervisor. One of the counseling sessions was labeled as an exhibit and the other was labeled as a section. There were two memo or record; one labeled as an exhibit and one labeled as a section. There were two statements from Subject; one was labeled as an exhibit, the other was labeled as a section, although I did not give two statements. There was a polygraph examination that had my 1989 periodic reinvestigation case control number. There was a statement of reasons in that information. There were documents in which the signatures of WHS were not identifiable.

The information I received in November 2007, only had one administrative inquiry, one counseling session from Phil Bowling, one memo of record, one statement of Subject and no polygraph examination. I still have all the information that was sent to me from Ms. Blake and DSS.   Also there were pictures of Ms. Whitfield in November 2007which her face was blacked out. These pictures were not in the information in 1998.

In December 1994, I found out that I was well aware of the allegations of an affair and the role it played in my security clearance and termination from employment. An email dated December 13, 1995, from an anonymous spouse, (a spouse to date, who was never identified to me), complained to DSS because I was supposedly having or had an affair with her husband. This email started the investigation which led to the chain of events and then my termination. The only thing about this statement was that I was not having an affair nor was I ever asked or told about an affair while I was a special agent with DSS. The first time I saw the email was three months after I was terminated.

In Ms. Blake's statement on page two, "If however any of these employee records, (IG, HR, EEO, etc.) were at one time provide to the security clearance adjudicators (WHS) for adjudication purposes, they could well be maintained in the employee's adjudication file for 15 to 25 years, depending on the outcome of the adjudication. Consequently it is conceivable that a DSS employee's adjudicative records, (WHS) could have documents which are no longer being maintained by the originating agency. Do not assume that case adjudicators make their clearance determination based solely on what may be contained in a PSI file." I did not understand this statement because periodic reinvestigation is retained for 15 years with the agency who conducted the investigation. In 1996, I do not know of anyone but DSS conducting periodic reinvestigations or other investigations on their employees. It appears that there is a blame game between DSS and WHS and I am the one caught in the middle without knowing what is going on.

My request is for the truth and all my records including the information about an alleged affair that caused the revocation of my security clearance and termination from employment. No one could have been hurt as much as me by the decision that was made to protect everyone else.

2

I look forward to your immediate response. Enclosed is response from Leslie Blake, dated November 26, 2007.

Sincerely,

Gloria D. Yelder

Enclosures:

cc: US District Clerk
U.S. Attorney" Office



**DEFENSE SECURITY SERVICE**
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

Ms. Gloria D. Yelder
1807 Eufauls Avenue
Birmingham, Alabama 35208

NOV 2 - 2007

RE: **FOIA/PA# 063-28**

Dear Ms. Yelder:

On October 29, 2007, the Defense Security Service (DSS) received your January 21, 2007 request for records and information concerning you, as referred to DSS by the U.S. Department of Defense, Office of Freedom of Information (Attachment 1).

Attachment 2 (305 pages) is a copy of all releasable DSS documents pertaining to you, as provided to DSS by the DoD Office of Freedom of Information. Where marked out with white correction tape (page 131), information has been withheld that is exempt from the mandatory disclosure provisions of the Freedom of Information Act, for the following reason:

    a. Exemption (b)(6) is used to protect personal information or similar material pertaining to other individuals, any release of which would constitute a clearly unwarranted invasion of another individual's privacy.

Aside from the above- referenced withholding, nothing else from the documents have been withheld by DSS. However, since this one withholding constitutes a partial denial of information to you, you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Director, DSS, Attn: FOIA Appeal, 1340 Braddock Place, Alexandria, VA 22314-1651, within 30 days from receipt of this letter. In any such appeal, you should also provide a copy of this letter, along with sufficient justification upon which the Director may base a decision.

It should be noted that on February 9, 2007, DSS also received your January 21, 2007, request for information, as referred to us from Department of Defense, Office of Freedom Information. However, this referral only contained your 2 page letter to Washington Headquarters Services (WHS) requesting information pertaining to your security clearance. By letter dated June 7, 2007, DSS responded to your January 21, 2007, request by providing you a copy of all DSS investigative documents pertaining to you, **as maintained by DSS**.

Please understand that DSS personnel security investigations (PSI) are retained by DSS for 15 to 25 years from the date of the individual's last investigation. DSS employee records, to include Employee Relations, Inspector General, Security, and EEO records

**Exhibit 2**

are generally only retained by DSS for 5 years. If however any of these employee records (IG, HR EEO, etc.) were at one time provide to the security clearance adjudicators (WHS) for adjudication purposes, they could very well be maintained in the employee's **adjudication file** for 15 to 25 years, depending on the outcome of the adjudication. Consequently, it is conceivable that a DSS employee's **adjudicative records** (WHS) could have documents which are no longer being maintained by the originating agency. Do not assume that case adjudicators make their clearance determinations based solely on what may be contained in a PSI file. WHS adjudication "Record Source categories" are identified in their published System of Records Notice located on their web site at: www.defenselink.mil/privacy/notices/osd/DWHSP29.html.

We appreciate having been able to serve you in this matter. If you have any questions regarding the contents of the information released to you, please feel free to contact my office at (703) 325-9450. Instructions on amendment or appeal actions can be obtained from the DSS web site (www.dss.mil) under the FOIA/PA link.

Sincerely,

LESLIE R. BLAKE
Chief, FOIA/PA

Attachments
As stated



**DEFENSE SECURITY SERVICE**
1340 Braddock Place
Alexandria, VA 22314-1561

                     JAN 3    2008

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208

**RE: FOIA/PA# 197-28 (2) Appeal**

Dear Ms. Yelder:

This correspondence is to acknowledge receipt of your letter dated December 9, 2007, appealing Defense Security Service (DSS) information you claim to have been withheld from you.

The DSS is processing your request in accordance with the provisions of the FOIA/PA and upon completion a written response will be forwarded to you. We must inform you however, that due to a significant number of pending FOIA/PA actions a final response determination within the statutory time period (20 days) **may** not be possible.

Your request will be processed in a multitrack processing system, based on a first-in, first-out concept. If you can demonstrate to this office a compelling need for the information within the next 30 days, DSS may consider expedited processing. Enclosed is an information sheet on Multitrack Processing and what constitutes a compelling need.

We appreciate being of assistance to you in this matter. Should you have any additional questions, please feel free to contact my office at (703) 325-9450.

Sincerely,

LESLIE R. BLAKE
Chief, FOIA/PA

Enclosure

**Exhibit 3**

## Multitrack Processing

When the Defense Security Service (DSS) (formerly: Defense Investigative Service (DIS) ) has a significant number of pending requests that prevents a response determination being made within 20 working days, the request will be processed in a multitrack processing system. Each request is processed in the multitrack system, based on a first-in, first-out concept, and rank ordered by the date of the request, the amount of work and time involved in processing the request, and whether the request qualifies for expedited processing. Track (1), is used for processing simple requests, Track(2), is used for processing complex requests, and Track(3), is for processing expedited requests. Determinations as to whether a request is simple or complex is made by the Manager, Office of FOIA and Privacy. If your request did not qualify for the faster queue (i.e. Track(3)), you have the opportunity to limit in writing by hard copy, facsimile, or electronically, the scope of your request in order to qualify for the faster queue.

## Expedited Processing

Expedited processing shall be granted to a requester after the requester requests such and demonstrates a compelling need for the information.

(1)    Compelling need means that the failure to obtain the record on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.

(2)    Compelling need also means that the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. An individual primarily engaged in disseminating information means a person whose primary activity involves publishing or otherwise disseminating information to the public. Representatives of the news media would normally qualify as individuals primarily engaged in disseminating information. Other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public.

(3)    Urgently needed means that the information has a particular value that will be lost if not disseminated quickly (e.g. a breaking news story of general public interest).

(a)    A demonstration of compelling need by the requester shall be made by a statement certified by the requester to be true and correct to the best of their knowledge. This statement must accompany the request in order to be considered and responded to within 20 calendar days.

(4)    Other Reasons for Expedited Processing   Other reasons that merit expedited processing by DSS are an imminent loss of substantial due process rights and humanitarian need   Humanitarian need means that disclosing the information will promote the welfare and interest of mankind. In both cases, a demonstration of the need shall be made by a statement certified by the requester to be true and correct to the best of his or her knowledge. The statements mentioned above must accompany the request in order to be considered



January 17, 2008

*file with →* 97-28

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 613-6680


Defense Security Service
1340 Braddock Place
Alexandria, VA 22334

RE: FOIA/PA# 97-28 (a) Appeal

Dear Director:

This is an appeal for expediting my request for records under the Freedom of Information Act, 5 U.S.C. 552.

On December 9, 2007, I made an FOI Act appeal request to DSS for all my information pertaining to my security clearance and termination from employment. On November 26, 2007, Ms. Blake, Chief, FOIA/PA Office sent me 305 pages of releasable DSS documents pertaining to me. The FOIA Office stated that all other information is exempt from mandatory disclosure under the FOIA, for the following reason:

   a.  Exemption (b)(6) is used to protect personal information or similar material pertaining to other individuals, any release of which would constitute a clearly unwarranted invasion of another individual's privacy. But Exemption (b)(6) did not apply when DSS disclosed the fraudulent information to Washington Headquarters Services without my knowledge or participation. Copies of my requests and denials have been previous provided.

It has been almost ten years when I first asked for my records. In September 2005, I again requested my records and for those records to be expedited because I was in litigation, but I never received an answer from your office.

In December 9, 2007, I appealed your denial of my records. On January 3, 2008, your office stated that due to significant number of pending FOIA/PA actions a final response determination within the statutory time period (20 days) may not be possible. This was the same response I received over two years ago.. Again this period of request clearly exceeds the 20 days provided by the statute, thus I deem the request denied.

The information I have requested is clearly releasable under the FOI Act and, in my opinion, may not validly be protected by any of the Acts exemptions since this information is about my security clearance.

# Exhibit 4

In May 2005, Department of Defense stated that they knew in 2001, that I did not know about the investigations/information when I filed my EEO complaints and during the pendency of my security clearance process. But still none of these investigations were provided to me.

I trust that upon re-consideration, you will reverse the decision denying me access to my security clearance material and grant my original request, Especially since WHS sent DSS this information in October 2007. (See Attached Memo from WHS, dated October 23, 2007.) However, if you deny this appeal, I intend to continue to pursuit this in court.

I would appreciate your expediting the consideration of my appeal in every way possible because I have asked for the information for so long, but all my requests have been ignored. I have been denied the proper information/investigations about my security clearance and termination, causing me to never received substantial due process before or after I was terminated as a special agent with DSS. In any case, I will expect to receive your decision within 20 business days, as required by the stature.

I certify that the reasons I seek expedited review are true and correct to the best of my knowledge and belief.

Sincerely,

Gloria D. Yelder

Enclosure:



**DEFENSE SECURITY SERVICE**
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

MAR 1 3 2008

Ms. Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208

RE: FOIA/PA# 197-28 (2) Appeal

Dear Ms. Yelder:

This is in reference to your letter dated December 9, 2007, in which you appeal the decision of the Defense Security Service (DSS), Office of Freedom of Information and Privacy, to withhold from you information that is exempt from the mandatory disclosure provisions of the Freedom of Information Act (FOIA). After a careful review of this matter, I have determined that your appeal should be denied.

On October 29, 2007, the DSS received from the Department of Defense, Office of Freedom of Information (DoDOFI), a FOIA referral containing your January 21, 2007, request for records and information, along with DSS documents located during their search for information responsive to your FOIA request. Since the documents in question originated with DSS, they were referred to DSS for our review and direct response to you. By letter dated November 28, 2007, the DSS Office of Freedom of Information and Privacy, disclosed to you all releasable DSS documents (305 pages) which had been referred to us by DoDOFI with the exception of a single page (attached) which DSS sanitized with correction tape to protect the identity of other individuals. The DSS correspondence explained to you that information on that single sheet was withheld from release in accordance with FOIA Exemption (b)(6), which covers personal information pertaining to other individuals, any release of which would constitute a clearly unwarranted invasion of those other individuals' privacy. By letter received on December 11, 2007, you appealed this withholding, and you stated that "Exemption (b)(6) does not give the agency the right to conceived and to confuse or frustrate the information so I am unable to receive a fair opportunity to defend myself."

In reaching our decision on whether the individuals in the photographs warrant protection under Exemption (b)(6), DSS looked at whether the information applied to a particular individual, whether disclosure of the information would constitute a clearly unwarranted invasion of personal privacy, and whether there existed a public interest in disclosure which would outweigh a privacy interest. Our conclusion is that the photographs in question apply to particular individuals other then you ( See United States Department of State v. Washington Post Co., 456 U.S.595, at 602 (1982) (All information which "applies to a particular individual" meets the threshold requirement for Exemption 6 protection).; Because the photographs are of an intimate sexual nature which could be potentially embarrassing to the parties concerned if made public and

1

**Exhibit 5**

because the photographs shed no light on this agency's performance of its statutory duties, there is no public interest in disclosure. See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, at 775 (1989) (Information that does not directly reveal the operations or activities of the federal government falls outside the ambit of the public interest that the FOIA was enacted to serve.) Additionally, nowhere in your appeal did you establish how disclosure of these photographs would serve the public interest. Under the FOIA, the burden of establishing that disclosure would serve the public interest is on you, not DSS. See Carter v. United States Dep't of Commerce, 830 F.2d 388, 391 nn.8 & 13 (D.C. Cir. 1987).

In light of the above legal standards, I find that the DSS decision to withhold the identity of those individuals shown in the photographs was proper and our response to you is adequate to satisfy DSS's obligation under the FOIA.

Please be aware that, as Director of the Defense Security Service, I am the final denial authority for this agency. If you are dissatisfied with this decision, you may seek judicial review in the United States District Court where you reside, where your principal place of business is located, where the records are maintained, or in the District of Columbia. See 5 U.S.C. 552a (g) (1).

Sincerely

KATHLEEN M. WATSON
Director

Attachment

2







131

ATTACHMENT 1

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

Gloria D. Yelder )
)
)
Plaintiff )
)
v. )
) Case No.  1:07-cv-01639
Department of Defense )
Defense Security Service )
Washington Headquarters Service )
)
)
Defendants )
)

---

## DECLARATION OF WILLIAM T. KAMMER

---

I, William T. Kammer, hereby declare under penalty of perjury that the following information is true and correct to the best of my knowledge:

1. I am the Chief, Office of Freedom of Information (OFOI), Executive Services Directorate, Washington Headquarters Service (WHS), a Component of the Department of Defense (DoD), and have held that position since August 2005.  As Chief, I am responsible for implementation of the DoD Freedom of Information Act (FOIA) Program and issuance of agency-wide policy guidance and instruction on FOIA matters.  See 32 CFR 286.  Additionally, I supervise the processing of initial FOIA and Privacy Act (PA) requests for documents within the possession and control of the Office of the Secretary of Defense (OSD), of which WHS is a Component, and the Office of the Chairman of the Joint Chiefs of Staff (Joint Staff).  I also supervise the processing of FOIA/PA appeals for the OSD and the Joint Staff.

1

2. I am familiar with the subject litigation and the FOIA/PA request submitted by the plaintiff in this case. The statements in this declaration are based upon my personal knowledge, upon my review of information available to me in my official capacity, and upon my conclusions.

3. On February 1, 2007, OFOI received a FOIA/PA request from plaintiff dated January 21, 2007. See Exhibit 1. This request was tasked to the Human Resources Directorate (HRD), WHS with the request to search for responsive records. Additionally, on February 6, 2007, a copy plaintiff's request was forwarded to the Defense Security Service (DSS), for additional search. See Exhibit 2. On October 17, 2007, HRD replied to OFOI and we responded to plaintiff's request, on October 23, 2007, with 405 pages of responsive information. See Exhibit 3. No information was withheld from plaintiff. Also on October 23, 2007, 341 pages of responsive information were referred to DSS and 8 pages of responsive information were referred to the Department of Justice for review and direct reply to the requester. See Exhibit 4. As of this date, OFOI has not received an appeal from plaintiff concerning the October 23, 2007, response.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this **20th** day of November 2007, at Arlington, Virginia.

_William T. Kammer_
William T. Kammer

January 21, 2007

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 781-3454

Washington Headquarters Services
Department of Defense
1155 Defense Pentagon
Washington D. C. 20301-1155
Certified Mail

To Washington Headquarters Service:

I am Gloria Dean Yelder, DOBP: ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ SSN: ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ . I was a special agent with the Defense Security Service, (DSS), Department of Defense, (DoD) from Sept 1982 to August 1998, before my security clearance was revoked and I was terminated from my employment. I have recently found out that my security clearance was revoked due to an alleged affair and that I was supposedly well aware of the effects of the alleged affair on my security clearance and termination from employment.

Please be advised that I have never been interviewed, told nor have I received the above mentioned information or investigations, especially while I was employed as a special agent with the DoD, DSS. I am requesting all information pertaining to my **security clearance, including Periodic Reinvestigation, (PR), Case Controller Number 96192-DXC-1817-1E3, as well as any investigations or information pertaining to my security clearance.** I am well aware that Washington Headquarters Services revoked my security clearance based on the above mentioned PR and investigations conducted by DSS, my former employer.

I have received letters from my Congressman, Artur Davis and my senator, Senator Richard Shelby stating that DSS and Washington Headquarters Services would be more than happy to finally provide the above mentioned PR that caused the revocation of my security clearance and termination from employment.

*EXHIBIT 1*

*Aff ‒ 10 707 ‒ 02*

As an US citizen, I deserved the right to defend myself before my security clearance was revoked. In your letters, you stated that I was given due process which has never happened.

I look forward to your immediately response within twenty (20) days of receipt of this letter. If I am unable to get my records I was informed that I needed to come back to Congressman Davis and Senator Shelby's offices for assistance.

Thanks in advance for your cooperation. I hope we will be able to resolve this as soon as possible.

Sincerely,

Gloria D. Yelder

Notary



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

FEB 0 6 2007

Ref: 07-FP-0075

MEMORANDUM FOR DEFENSE SECURITY SERVICE
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

SUBJECT: Freedom of Information/Privacy Act (FOIA/PA) Request – Ms. Gloria D. Yelder

Attached is a two page request for records, if they exist, which may be under the purview of Defense Security Service. This FOIA/PA request concerns the revoking of Gloria D. Yelder's security clearance and her termination. Accordingly, we are referring it to your office for direct response to the requester. Also, the Washington Headquarters Service, Human Resources office is searching their files for responsive documents. The requester has been notified of this action.

A copy of the requester's initial letter and a copy of the interim response sent to her from this office are attached for your information. If you have any questions regarding this matter, please contact Angela Campagna at (703) 696-2641 or angela.campagna.ctr@whs.mil.

Will Kammer
Chief

Attachment:
As stated

*EXHIBIT 2*



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

OCT 2 3 2007

Ref: 07-FP-0075

Ms. Gloria Yelder
1807 Eufaula Avenue
Birmingham, AL 35208

Dear Ms. Yelder:

    This is in response to your January 21, 2007, Freedom of Information/Privacy Act request. We received your request on February 1, 2007.

    The Washington Headquarters Service, Human Resources Directorate provides the enclosed documents in response to your request. However, additional material that they located falls under the cognizance of the Defense Security Service and the United States Department of Justice. Accordingly, we sent that material to them at the addresses provided below, with the request that they respond directly to you.  There are no assessable fees for this response in this instance.

    Defense Security Service
    Chief FOIA and Privacy
    1340 Braddock Place
    Alexandria, VA 22314-1651

    Executive Office of United States Attorneys
    Department of Justice
    FOIA/Privacy Unit
    Room 7300, 600 E. Street, NW
    Washington, DC 20530-0001

                    Sincerely,

                    Will Kammer
                    Chief

Enclosures:
As Stated

*EXHIBIT 3*



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

OCT 2 3 2007
Ref: 07-FP-0075

MEMORANDUM FOR DEFENSE SECURITY SERVICE
1340 BRADDOCK PLACE
ALEXANDRIA, VA 22314-1651

SUBJECT: Freedom of Information Act (FOIA) Request – Ms. Gloria Yelder

The attached documents are of primary interest to your office. These documents concern Ms. Gloria Yelder's security clearance and her termination. Accordingly, we are referring them to your office for direct response. The requester has been notified of this referral and a copy of the referral letter is attached.

Please note that this case is in litigation and that the records were extracted from a Privacy Act System of Records. A copy of the FOIA/PA request, complaint, and systems notice are attached for your information. If you have any questions regarding this matter, please contact Mrs. Angela Campagna at (703) 696- 2641 or Angela.Campagna.ctr@whs.mil.

For Will Kammer
Chief

Attachment:
As stated

EXHIBIT 4



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

OCT 2 3 2007
Ref: 07-FP-0075

MEMORANDUM FOR EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS
        WILLIAM G. STEWART, II ASSISTANT DIRECTOR
        DEPARTMENT OF JUSTICE
        FOIA/PRIVACY UNIT
        ROOM 7300, 600 E STREET, NW
        WASHINGTON, DC 20530-0001

SUBJECT: Freedom of Information/Privacy Act (FOIA/PA) Request – Ms. Gloria Yelder

    The attached document is of primary interest to your office and concerns Ms. Gloria Yelder's security clearance and termination. Accordingly, we are referring it to your office for direct response. The requester has been notified of this referral and a copy of the referral letter is attached.

    Please note that this case is in litigation and that the records were extracted from a Privacy Act System of Records. A copy of the FOIA/PA request, complaint, and systems notice are attached for your information. If you have any questions regarding this matter, please contact Mrs. Angela Campagna at (703) 696- 2641 or Angela.Campagna.ctr@whs.mil.

                Will Kammer
                Chief

Attachments:
As stated

EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLORIA YELDER                            )
                                         )
                    Plaintiff,           )
                                         )
           v.                            )        Civil Action No. 07-01639 (RJL)
                                         )
U.S. DEPARTMENT OF                       )
DEFENSE, et al.                          )
                                         )
                    Defendants           )
                                         )

DECLARATION OF JOHN W. KORNMEIER

       I, John W. Kornmeier declare the following to be a true and correct statement of facts:

       1)  I am an attorney advisor with the Executive Office for United States Attorneys ("EOUSA"),

United States Department of Justice. In that capacity, my responsibilities include: acting as liaison with

other divisions and offices of the Department of Justice ("DOJ") in responding to requests and the

litigation filed under both the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 (1988), and the

Privacy Act of 1974, 5 U.S.C. §552a (1988) ("PA"); the review of FOIA/PA requests for access to

records located in this office and 94 United States Attorney's offices ("USAO's") and the case files

arising therefrom; the review of correspondence related to requests; the review of searches conducted in

response to requests; the location of responsive records; and preparation of responses thereto by the

EOUSA to assure that determinations to withhold (or to release) such responsive records are in

accordance with the provisions of both the FOIA and the PA, as well as the Department of Justice

regulations (28 C.F.R. §§16.3 et. seq. and §16.40 et. seq.).

       2)  As an attorney advisor of the FOIA/PA Unit, EOUSA, I have authority to release and/or

withhold records requested under the FOIA/PA, and to advocate the position of the EOUSA in actions

brought under these Acts. The statements I make hereinafter are made on the basis of my review of the

official files and records of EOUSA, on my own personal knowledge, or on the basis of information

acquired by me through the performance of my official duties.

3) Due to the nature of my official duties, I am familiar with the procedures followed by this office in responding to the FOIA/PA request made to by the above-captioned Plaintiff, Gloria Yelder (hereinafter referred to as "Ms.Yelder") .

4) On October 23, 2007, the Department of Defense ( "DOD") referred records to EOUSA to review, make a determination about disclosure, and respond directly to Ms. Yelder.

5) After having reviewed the records, EOUSA, by letter dated November 30, 2007, informed Ms. Yelder that it was releasing five pages and withholding one nine page document in full; see Exhibit A for a copy of this letter.[1] Ms. Yelder filed an administrative appeal with the Office of Information and Privacy which affirmed EOUSA's decision on March 20, 2008; see Exhibit B for a copy of the March 20, 2008 administrative appeal decision.

6) The document that EOUSA withheld is a letter dated February 5, 2001, from John C. Bell, Assistant United States Attorney to Honorable John E. Ott, U.S. Magistrate Judge for the Northern District of Alabama, with a copy to his client Amy Brown, Assistant General Counsel, Defense Security Service; no copy is provided to the other party.  The letter is labeled "Confidential-By Hand Delivery" and is provided pursuant to the January 16, 2001 Order of Mediation in the *Gloria Yelder v. The U.S. Department of Defense* case, CV-00-N-0458-S; see Exhibit C for a copy of the Order of January 16, 2001.  The letter, which is confidential under the mediation process, reveals the Government's position in the case to the mediator.

7) EOUSA asserts exemption (b)(3) of the FOIA to withhold this document.

---

[1] A short explanation is necessary to reconcile the difference in the number of pages DOD said it referred in the William Kammer declaration (Doc. 8-3) submitted with the Defendants' motion to dismiss or for summary judgment, 8 pages, and the number of pages EOUSA says it received, 14 pages. EOUSA's response letter of November 30, 2007 states that fourteen pages were received from the DOD, of which five pages were released in full and nine pages withheld in full. Examination of the five pages released in full shows them to be the FOIA complaint in the instant case which was apparently included in the DOD referral package for information only and not as a responsive document. The remaining nine page document which was withheld in full is the letter addressed in this declaration. Examination of that document indicates it is actually seven pages. It appears that EOUSA and DOD either miscounted or included cover pages. This office confirmed with Angela Campagna of DOD that the one responsive document DOD sent was a seven page letter, dated February 5, 2001, from John C. Bell to the Honorable John E. Ott which is the withheld document addressed in this declaration.

8) Exemption (b)(3) exempts from mandatory release information specifically exempted from disclosure by another statute. This exemption permits the withholding of information prohibited from disclosure by another statute if that statute either (A) requires that the matters be withheld from the public without discretion, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; 5 U.S.C. section 552(b)(3). EOUSA asserts exemption (b)(3)(B), to withhold the mediation document under 28 U.S.C. 652(d), and under 5 U.S.C. 574(j).

9) Under 28 USC 652(d), which concerns alternative dispute resolution, each district court shall provide by local rule for the confidentiality of the process and prohibit disclosure of confidential communications. The January 16, 2001 Order, Exhibit C, referred the *Yelder* case *supra* to mediation under the "Plan" which requires confidentiality; see local rule 16.1(c) of the Northern District of Alabama Court, which references the "ADR plan".

10) Under 5 U.S.C. 574(j), a confidential alternative dispute resolution communication is exempt from disclosure under exemption (b)(3) of the FOIA.


I declare under penalty of perjury that the foregoing is true and correct. Executed on March 27, 2008.

John W. Kornmeier

- 3 -



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: Gloria Yelder                      Request No.: 07-3728-R

Government Component that referred material: United States Department of Defense

Dear Requester:                                                    NOV 3 0 2007

    This is in reply to your Freedom of Information Act/Privacy Act request of May 16, 2007. Records were referred to us by the government component above for direct response to you.

    The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

Section 552                                     Section 552a

[   ] (b)(1)      [   ] (b)(4)      [   ] (b)(7)(B)      [ X ] (j)(2)
[   ] (b)(2)      [   ] (b)(5)      [   ] (b)(7)(C)      [   ] (k)(2)
[ X ] (b)(3)      [   ] (b)(6)      [   ] (b)(7)(D)      [   ] (k)(5)
_____   [   ] (b)(7)(A)   [   ] (b)(7)(E)      [   ] _____
_____                    [   ] (b)(7)(F)

    We have reviewed approximately ___14___ page(s) of material:

___5___ page(s) are being released in full (RIF);

_____ page(s) are being released in part (RIP);

___9___ page(s) are withheld in full (WIF) and

_____ pages were duplicate copies of material already processed.

    This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)                                           Form No. 024 - 3/07





**U.S. Department of Justice**

RECEIVED Office of Information and Privacy

2008 MAR 27 PM 2:05

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

FOIA/PA

**MAR 2 0 2008**

Ms. Gloria D. Yelder                    Re:    Appeal N. 08-0615
1807 Eufaula Avenue                            Request No. 07-3728-R  CNG
Burmingham, AL 35208                           KAH:CG

Dear Ms. Yelder:

        You appealed from the action of the Executive Office for United States Attorneys
(EOUSA) on records referred to it by the Department of Defense pursuant to your request for
access to records pertaining to yourself.

        After carefully considering your appeal, I am affirming, on partly modified grounds,
EOUSA's action on the records referred to it.  EOUSA properly withheld certain information that
is protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C.
§ 552(b)(3), which concerns matters specifically exempted from release by statute (in this
instance, 5 U.S.C. § 574 (j) and 28 U.S.C. § 652(d)), both of which pertain to confidential
dispute resolution communications.

        If you are dissatisfied with my action on your appeal, you may file a lawsuit in
accordance with 5 U.S.C. § 552(a)(4)(B).

                                Sincerely,

                                Janice Galli McLeod
                                Associate Director

GOVERNMENT
EXHIBIT
B

DIKA

FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

01 JAN 16 PM 1:42

U.S. DISTRICT COURT
N.D. OF ALABAMA

GLORIA YELDER,                    )
                                  )
    Plaintiff(s),             )
                                  )
    vs.                       )        CV00-N-00458-S
                                  )
U. S. DEPARTMENT OF DEFENSE,      )
                                  )
    Defendant(s).             )

ENTERED

JAN 1 6 2001

### Order for Mediation

This case is referred to mediation pursuant to Section IV,B of this court's Alternative Dispute Resolution Plan, adopted December 1, 1993 (the "Plan").[1] The parties are directed to proceed forthwith to select a mediator from the court's Panel of Neutrals in accord with the requirements of the Plan. Within ten days of the date on which this order is entered, the parties shall notify Tom Pappas [278-1760], the court's ADR Administrator, of the person selected to serve as mediator, failing which the court will proceed in accordance with Section IV,B,3,b of the Plan. Alternatively, the parties may agree to utilize any alternate form of Alternative Dispute Resolution pursuant to Section IV,A of the Plan. In any event, they are required to notify the ADR Administrator of the name and address of the person selected to serve as the neutral mediator/arbitrator.

A current list of the court's panel of neutrals who are available for service as mediators is available from the clerk of the court.

---

[1] Mediation is a mandatory but non-binding settlement conference, conducted with the assistance of the mediator. All aspects of mediation are private, confidential and privileged from process and discovery. The process is treated as a compromise negotiation for purposes of the Federal Rules of Evidence and State rules of evidence. The mediator is disqualified as a witness, consultant, attorney, or expert in any pending or future action relating to the dispute, including actions between persons not parties to the mediation process. No subpoenas, citations, writs, or other process shall be served at or near the location of any mediation session, upon any person entering, leaving or attending any mediation session. Following mediation, the mediator will report to the court only that a settlement was reached or mediation was conducted and no agreements were reached, and nothing more.



GOVERNMENT
EXHIBIT

C

The parties are required to notify the court that they have made appropriate arrangements with the person selected to serve in that role.

While the action is referred to the ADR program, all proceedings are **STAYED** for a period of ___ -0- ___ days.

Done, this 16th day of _Jan._, 2009.

_Edwin L. Nelson_

Edwin Nelson
United States District Judge

2

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **GLORIA D. YELDER,** | ) |
|  | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )        **Civil Action No. 07-1639 (RJL)** |
|  | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **DEFENSE, <u>et</u> <u>al.</u>** | ) |
|  | ) |
|  | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

### <u>PROPOSED ORDER</u>

This matter having come before the Court on defendants' Motion for Summary Judgment,

plaintiff's opposition, if any, and defendants' reply, if any, it is hereby

**ORDERED** that defendants' motion is hereby granted.  And it is further

**ORDERED** that judgment is entered in favor of the defendants.

**SO ORDERED** on this ___ day of _____, 200___.


_____
**RICHARD J. LEON**
**UNITED STATES DISTRICT JUDGE**