UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

AUG 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| Gloria D. Yelder | ) |
| 1807 Eufaula Avenue | ) Civil Action No.:1:07-cv-01639 *RJL* |
| Birmingham, AL 35208 | ) |
|    Plaintiff, | ) |
|    vs | ) |
| United States Department of Defense | ) |
| Robert Gates, Secretary of Defense | ) |
| 1000 Defense Pentagon | ) |
| Washington, D.C. 20301-1000 | ) |
|    And | ) |
| Defense Security Service | ) |
| 1340 Braddock Place, | ) |
| Alexandria, VA 22314-1651 | |
|    ) | |
| Washington Headquarters Services | ) |
| 1155 Defense Pentagon | ) |
| Washington, D. D. 20301-1155 | ) |
| Defendants | ) |

MOTION TO COMPEL

1

Plaintiff is requesting that your Honor order the Defendants to release the requested documents/information pertaining to the revocation of her security clearance and termination of her employment as required by 5 U.S.C. 552a(d)(1), Privacy Act of 1974. The Privacy Act as revised by Congress and signed by the President in 2008 requires the agency to determine within in twenty (20) working days, as revised by Congress and signed by the President in 2008, whether it will comply with requests for information and 5 U.S.C. 552a(6)(A) allows ten (10) days to determine whether the requests will be expedited.

552a(d)(1)---Access to Records...states upon request by an individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompanying him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence.

2

For years, Defendants have failed to comply with Plaintiff's requests under subsection (d) (1) nor have the Defendants responded to whether the records will be expedited.

1. Since March 1998, for over ten years, Plaintiff has repeatedly and unsuccessfully requested her records about her security clearance; before her security clearance revoked; after her security clearance was revoked; before she was terminated; after she was terminated and even before and after her initial lawsuits were filed

2. For years until present, the Plaintiff has remained unaware of the cause of action that revoked her security clearance and terminated her employment as a special agent because the agency willful and intentionally mispresented the material and information in her security clearance. DSS and WHS allowed Plaintiff's reputation to be damaged, her security clearance to be revoked and her employment to be terminated without due process required under DoD 5200.2-R and the U.S. Constitution.

3. Defendants have changed their responses several times about the requested information pertaining to Plaintiff's security clearance and termination from employment.

## Request For Information

4. In March 1998, Plaintiff, through her former attorney, requested all the information pertaining to her security clearance. DSS and Washington Headquarters Services Consolidated Appeal Facility, (WHSCAF), stated that Plaintiff had all the information pertaining to the revocation of her security clearance.

5. In July 1998, before she was terminated, Plaintiff requested the information pertaining to her security clearance from DSS.

6. In November 1998, for the first time, three (3) months after she was terminated and (15) fifteen days after she filed her formal EEO complaint, Plaintiff received an email, dated December 10, 1995, which disclosed that the agency was under the impression that the Plaintiff had an alleged affair with anonymous spouse complaining to DSS. In that information the name of the anonymous spouse was

4

never disclosed nor were there any other documents about an investigation pertaining to an alleged affair.

7. In 2005 and 2007, Plaintiff requested the information about her security clearance under the FOIA and the Privacy Act, but she did not receive any responses as previously stated.

8. In December 2004, in US District case number, 04-S-1032-S, the judge's opinion stated Plaintiff was well aware of the allegations of an affair and the effects it had on her security clearance and termination from employment. Although in the previous lawsuit, case number, 00-N-0458, Defendants stated that there was no information about an alleged affair in Plaintiff's security clearance.

9. In May 2005, case 02-1032-S, Plaintiff stated that she was unaware of the information about an alleged affair while she was a special agent and in the previous lawsuit and an alleged affair was new information to Plaintiff. The alleged affair was fraudulent and untrue.

10. The Defendants admitted that they knew in 2001 that Plaintiff was unaware of the investigation about the alleged affair. Defendants admitted that they knew Plaintiff did not have all the

5

information needed during her security clearance process or when she filed her EEO complaints. Defendants admitted that this was not new evidence to them. Plaintiff never knew until that statement from the Defendants that they were aware she never received due process in the revocation of her security clearance and EEO investigations. But in 1998, Plaintiff's security clearance was revoked, her reputation damaged, her employment terminated and her EEO complaints were dismissed without due process as required by DoD 5200.2-R and the U.S. Constitution.

11. Defendants stated that the judge was only analyzing and interpreting the information in the report about the alleged affair, case 02-S-1032-S; however to date, Plaintiff does not know what information the judge was analyzing about Plaintiff and an alleged affair.

13. Plaintiff was never asked or interviewed about an alleged affair pertaining to her security clearance as required by the rules and regulations required of DoD 5200.2_R. Plaintiff never had an affair while she was a special agent with DSS. Plaintiff stated under oath in

her initial civil suit, 00-N-0458-S that she never had an alleged affair while she was a special agent nor did she know anything about an alleged affair.

14. In September 2005, Defendants stated that the email, dated December 10, 1998, about an alleged affair lead to the chain of events that caused the revocation of her security clearance and termination from employment.  This is an untrue base assertion.

15  In both cases, 00-N-048-S and 02-S-1032-S, Plaintiff was never shown the evidence that disclosed that she was well aware of the allegations of an affair and the effects on Plaintiff's security clearance and termination from employment.

16. In October 2007, WHS informed Plaintiff that they were sending 405 pages of responsive information pertaining to the revocation of Plaintiff's security clearance and termination from employment to DSS in order for DSS to respond to Plaintiff.  WHS also sent eight (8) pages to the United States Department of Justice.

17. In November 2007, of those 405 pages from WHS, DSS sent 305 pages to Plaintiff.  The 305 pages were no different from the

7

information sent in 1998, except for the three (3) photographs of Mrs. Andrea Whitfield and Mr. Alvin Green engaged in sexual activities in an extramarital affair.

18. DSS informed Plaintiff that they were exempting the release of the identities and information of two individual in the three intimate photographs because these photographs would be embarrassing to the parties involved, if they were made public.

19. Instead of searching for the truth about the secret and fraudulent information about an alleged affair, the Defendants used and continually uses the information to humiliate and to embarrass Plaintiff in the public. This fraudulent information about an alleged affair was created and used to destroy Plaintiff's reputation, to revoke Plaintiff's security clearance and to terminate Plaintiff's employment.

20. At no time can Plaintiff stop anyone from lodging a complaint against her as Mrs. Whitfield did at DSS. Mrs. Whitfield complained to Plaintiff's supervisors, including Phil Bowling, that Plaintiff harassed her by telling her spouse, Oliver Whitfield about her extramarital affair

8

with Mr. Green via letters and telephone and about their heated argument. A heated argument did occurred, but there was no need for Plaintiff to harass Whitfield. The painful and personal situation about a single man, Alvin Green that Plaintiff dated, who had an affair with a married woman, Mrs. Whitfield, turned into a complaint that Plaintiff was having an alleged affair with a married man and the spouse complained to DSS. This incident was done deliberately with no consideration of what it would do to Plaintiff's reputation, her security clearance or her employment. This caused substantial harm to Plaintiff.

21. For the first time in 2008, Plaintiff was informed that mediation was conducted, during which the government presented its case in Plaintiff's former case, but the information was not provided to Plaintiff.

23. The information about an alleged affair and whatever else that the government was and is trying to exempt was used to damage Plaintiff's reputation, to revoke Plaintiff's security clearance and

9

terminate Plaintiff's employment as well as dismiss her lawsuits without due process.

24. WHS stated that Plaintiff took full advantage of her due process under DoD 5200.2- R during the security clearance process in 1998. This was untrue because one of the criteria of the security clearance process is that the individual who clearance was tentatively revoked must receive all the information used to revoke the individual's security clearance. How could that be true when at no time did Plaintiff get the fraudulent and secret investigation about an alleged affair which caused the revocation of her security clearance as required by DoD 5200.2-R. Defendants have admitted that they knew Plaintiff did not have all the information used to revoke her security clearance. Thus, Plaintiff could not have mounted an adequate defense.

25. In October 2007, Plaintiff found that the administrative law judge's opinion of the DoD Hearings and Appeals that was provided to her had been redacted. The redacted copy as well as the copy that was not redacted was sent to WHS Clearance Appeals Board.

26. WHS never sent any information directly to Plaintiff. All information had to go directly through DSS and DSS sent the information to Plaintiff for her response. Plaintiff would send her response to DSS and DSS would send Plaintiff's response to WHS. Plaintiff never received any information about an alleged affair while she was a special agent with DSS. WHS, however, has held Plaintiff accountable for information about an alleged affair that she was unaware of and never received while she was a special agent with DSS. To date, Plaintiff is still unaware of an alleged affair and how an alleged affair affected the revocation of her security clearance and her termination from employment.

27. For over ten years, the Defendants has ignored her requests; stated that they never received her request even though she showed proof of the requests; made excuses why her requests can not be processed or just covered up the truth all together.

28. Before Plaintiff's security clearance was revoked, before Plaintiff was terminated, and before the lawsuits, (unaware of the information about an alleged affair that was placed in her security

11

clearance), Plaintiff had gone to so many people for help, including DSS, WHSCAF, WHSCAB and DoD Inspector General, but she was not provided any assistance.

29. Plaintiff received a letter from DSS, Privacy Act Branch, (DSSPAB), dated July 3, 2008, advising her about the requested information. (See letter from DSS, dated July 3, 2008 as Exhibit1)

30. In 1997, when Plaintiff's security clearance was tentatively revoked it was the DSSPAB who sent the investigation to Plaintiff which contained no information about an alleged affair.

31. On July 17, 2008, Plaintiff sent a certified letter to DSSPAB requesting the information as an urgent need, since the information had been requested over ten years ago and also because Plaintiff was never afforded due process in the revocation of security clearance as well as her lawsuits. But, to date, there has been no response. (See letter to DSS, dated July 17, 2008 as Exhibit 2)

32. The refusal of Defendants to release all information that caused the damage to Plaintiff's reputation, the revocation of her security

clearance and the termination of her employment has caused Plaintiff enormous pain and suffering.

33. After years of requests and inquiries, the Defendants have still failed to provide Plaintiff with the information she has requested.

34. Defendants have allowed Plaintiff's former supervisors and former co-workers access to her records which has been an embarrassment to Plaintiff.

35. Even Plaintiff's former clients have informed her about an alleged affair in her security clearance. Other people know about the revocation of Plaintiff's security clearance. Plaintiff does not know. This has truly been unfair.

36. Plaintiff has a statutory right to the records that she seeks, and there is no legal basis for Defendants' refusal to disclose the information.

37. It is totally unfair and unjust for the Defendants to continue to deny Plaintiff the requested information to clear her name. Denying

13

her these documents has taken too long and it has taken a toll on Plaintiff's life.

38. It is time for the Defendants to bring resolution to this matter and to provide the requested information.

39. Plaintiff strongly believes that the Defendants will not respond to her requests without your Honor's order.

WHEREFORE, Plaintiff requests and prays that this Court:

(1) Declare that Defendants' refusal to disclose the records requested by Plaintiff is unlawful;

(2) Deny the Defendants' requests for exemptions because they should not apply in this case because the exempted information was conducted in secret and used to revoke Plaintiff's security, to damage Plaintiff's reputation and terminate Plaintiff's employment without the required due process..

(3) Order Defendants to make the requested records available within ten (10) calendar days.

(4) Award Plaintiff its costs and reasonable attorney's fee in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

(5) Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted

*[signature]*

Gloria D. Yelder, pro se

1807 Eufaula Avenue

Birmingham, AL 35208

(205) 613-6680

15

**DEFENDANTS SERVED VIA CERTIFIED MAIL:**

I, Gloria D. Yelder, hereby declare that on the ____21st____ day of ____August____, 2008, I mailed a copy of the Motion to Compel and two exhibits, certified mail returned receipt, to the below listed Defendant.

_____

Michele Johnson

United States Attorney for the District of Columbia

501 Third Street, NW

Washington, D.C. 20530


*[signature]*

Gloria D. Yelder

*Pro se*

1807 Eufaula Avenue

Birmingham, AL 35208

(205) 613-6680

16



**DEFENSE SECURITY SERVICE**
PRIVACY ACT BRANCH
938 ELKRIDGE LANDING ROAD
LINTHICUM, MD 21090-2917

MS GLORIA D YELDER
1807 EUFAULA AVE
BIRMINGHAM AL 35208

JUL -3 2008

We have received your Privacy Act request for information and records concerning you.

We received your request either directly from you or as a referral from another US Government agency to which you had previously made a Privacy Act request.

The referral of Privacy Act requests between federal agencies is a common practice. Sometimes, when an agency is responding to a Privacy Act request, they discover that they have information that is the property of another agency and falls outside of their release jurisdiction. Other times records checks will indicate that other agencies may have information that would be responsive to an individual's Privacy Act request. It is items such as these that will necessitate referrals.

Please be advised that due to an extensive backlog of requests and certain resource constraints you may have sent in your Privacy Act request a considerable time ago. We shall provide you a final response as soon as we are able, however, we are unable to estimate the completion time of your request.

We are processing your request in accordance with the provisions of the Privacy Act of 1974 (5 U.S.C. 552a).

If there is an urgent need for the requested material, please notify us and we will consider the request on a case-by-case basis.

We look forward to serving you further in this matter.

Sincerely,

S. J. DEMARCO, IV
Chief, Privacy Act Branch

FL1E

*Exhibit 1*

July 17, 2008

Gloria D. Yelder
1807 Eufaula Avenue
Birmingham, Alabama 35208
(205) 613-6680

Attn: S. J. Demarco, IV
Chief, Privacy Act Branch
Defense Security Service
938 Elkridge Landing Road
Linthicum. Md. 21090-2917

Dear Mr. Demarco:

I have received your letter dated July 3, 2008 about my request for the information used in the revocation of my security clearance. Your letter indicated that if there is an urgent need for the requested material, please notify your office for the consideration of the request. Your letter also disclosed that my request is being process in accordance with the provisions of the Privacy Act of 1974 (5 U. S. C. 552a).

1. My request for the material is of an urgent need because the request for the information about the revocation of my security clearance has been going for so long, over ten years.

2. I never received due process afforded me as provided by DoD 5200.2-R because I never received the correct information/investigations about my security clearance while I was a special agent with DSS nor have I received the correct information since my clearance was revoked.

3. In 1997/1998, my security clearance was revoked, my EEO complaints were dismissed, my employment terminated and reputation damaged due to the erroneous information that was placed in my security clearance without my knowledge and participation as indicated by your attorneys in May 2005.

4. To have information that I knew nothing about at the time of my security clearance and still know nothing about to be held against me for so many years is unfair. The request for the information has caused me a lot of pain and suffering as well as a financial burden.

Exhibit

5. My entire life has been devastated because I did not receive the correct information in 1997 that caused the revocation of my clearance.

6. This is my urgent request so I can finally put closure to a long and painful process. To continue to take time to release these records would be a great injustice.

7. I wrote to your office two times in 2007, but I never received any response from you. I look forward to your response within fifteen days of receipt of this letter.

Thanks in advance for your cooperation and consideration.

Sincerely,


Gloria D. Yelder

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ 5.02 |

Postmark Here  04  07/19/2008

7006 3450 0002 2927 3884

Sent To: Demarco, Chief PA, DSS
Street, Apt. No.; or PO Box No.: 938 Elkridge Landing Rd
City, State, ZIP+4: Linthicum, MD 21890

PS Form 3800, August 2006                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   S. J. Demarco, IV
   Chief, Privacy Act Branch
   DSS
   938 Elkridge Landing Rd
   Linthicum, MD 21090

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X __W.Dustman__  ☑ Agent  ☐ Addressee

B. Received by (Printed Name): W. Dustman
C. Date of Delivery: 7/22/08

D. Is delivery address different from item 1? ☐ Yes   ☐ No
   If YES, enter delivery address below:

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label): 7006 3450 0002 2927 3884

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540